763 A.2d 1283

MICHAEL NOTARMASO AND KATHLEEN NOTARMASO, PLAIN-TIFFS, v. RICHARD GOODMAN AND KATHLEEN GOODMAN, INDIVIDUALLY AND D/B/A RICHARD'S REALTY, THE NEW JERSEY REAL ESTATE COMMISSION, DEFENDANTS.

Superior Court of New Jersey
Law Division Middlesex County

Decided June 14, 2000.

*Michael A. Cifelli*, Esq., Attorney for Plaintiffs (*Hardin, Kundla, McKeon, Poletto & Polifroni*).

*Denise M. Illes*, Esq., Deputy Attorney General, Attorney Defendant New Jersey Real Estate Commission.

WOLFSON, J.S.C.

## I. *Factual and Procedural Background*

This action arises out of a failed real estate transaction, in which Richard Goodman,[1] at one time a licensed real estate broker, received, but misappropriated the plaintiffs' deposit monies. The novel issue presented in this case is one of statutory construction, which requires me to ascertain whether the Legislature intended the New Jersey Guaranty Fund to provide compensation under the circumstances of this case.

The relevant facts are undisputed. Plaintiffs, Michael and Kathleen Notarmaso, entered into a contract to purchase certain property in Caldwell, New Jersey in September, 1992. On October 2, 1992, plaintiffs gave a deposit on the property in the amount of $12,500 to Richard Goodman of Richard's Realty, which was to be held in the Company's trust account until closing. While he negotiated the contract for sale, and thereafter, when he accepted the deposit monies, Goodman had "ceased to be active," because he had not paid the necessary renewal fee prior to his license's June 30, 1991 expiration date.[2] In fact, Goodman's last continuous

---

[1] Although the complaint names Richard Goodman, his wife, Kathleen, and Richard's Realty as defendants, for ease of reference, these defendants will hereafter be referred to collectively as "Goodman" or "the Goodmans."

[2] The New Jersey Real Estate Commission licensing records utilize the following terms to describe the changing status of real estate professionals: (1)

period of licensure was between October 18, 1989 and June 30, 1991, while the last period of continuous licensure for Richard's Realty was from September 13, 1984 to September 2, 1986.

The original closing was scheduled for November 18, 1992, but was rescheduled for December 22, 1992. When the plaintiffs appeared on December 22, 1992, Goodman's office was closed and he failed to appear and produce the deposit money. The plaintiffs thereafter filed a criminal complaint against Goodman in 1992 and he was subsequently convicted of the unlawful taking of the plaintiffs' money. As a condition of his parole, Goodman was to make restitution payments to plaintiffs in the amount of $12,500. Goodman made an initial payment in the amount of $1,700, but failed to pay the remaining amount. Mr. Goodman's default prompted the present action.[3]

In this suit to recover their lost deposit, the plaintiffs seek compensation from the Real Estate Commission through the Real Estate Guaranty Fund, established pursuant to *N.J.S.A.* 45:15–34. In December, 1999, the parties appeared before me on cross motions for summary judgment. Ultimately, I denied both motions, concluding that discovery was incomplete regarding whether and to what extent the Commission was aware of Richard Goodman's illegal course of conduct, and, if so, whether and to what extent the Commission's own actions or inactions facilitated or otherwise sanctioned Goodman's being engaged in unlawful brokerage activity. *See, Brody v. Alfieri,* 179 *N.J.Super.* 485, 491, 432 *A.*2d 567 (Ch.Div.1981 )(Commission's failure to preclude all brokerage activity while winding down broker's business, despite its knowledge of multiple transgressions warranting broker's loss

"active" or "inactive;"(2) "renewed" or "unrenewed;" and (3) "revoked, suspended or surrendered with prejudice." *See also, N.J.A.C.* 11:5–3.9(a) (requiring brokers who "cease to be active" to return their licenses for "cancellation"); *and see N.J.S.A.* 45:15–9 (setting forth the requirements necessary for license "renewal").

3 Final judgment by default was previously entered against Richard and Kathleen Goodman, individually and d/b/a Richard's Realty.

of license, deemed sufficient to impose liability against the Fund). I further ruled that the motions could be renewed upon the completion of discovery, which renewed motions were heard before me on May 26, 2000.

## II.  Legal Analysis

The question before me is purely a legal one: whether a party aggrieved by an "inactive" broker or salesperson, or by an unlicensed employee of an unlicensed broker, is entitled to recovery from the Real Estate Guaranty Fund. This question creates an issue of first impression requiring an interpretation of the language and scope of the Legislature's intent in enacting *N.J.S.A.* 45:15–34.

*N.J.S.A.* 45:15–34 provides that recovery may be obtained from the Real Estate Guaranty Fund "by any person aggrieved by the embezzlement, conversion or unlawful obtaining of money or property in a real estate brokerage transaction by a *licensed real estate broker,* broker-salesperson or salesperson or an unlicensed employee of a real estate broker . . .".[4] Thus, in order to find that plaintiffs are entitled to recovery from the Guaranty Fund, I must determine whether Richard Goodman was a "licensed real estate broker" or whether either he or his wife, Kathleen Goodman, can be deemed to be "an unlicensed employee of a real estate broker."

Plaintiffs advance three arguments in support of their position that they were intended to be included within the class of persons for whom the Guaranty Fund provides protection: (1) an "unlicensed" broker is legally distinct from an "inactive" broker for the purposes of recovery under *N.J.S.A.* 45:15–34; (2) because Richard Goodman was acting as an escrow agent when he accepted plaintiffs' deposit monies, he was acting as a broker within the meaning of *N.J.S.A.* 45:15–34; and (3) even assuming that Richard

---

[4] Recovery is limited by this statute to $10,000.00 per transaction for causes of action which accrued before May 20, 1993, and $20,000.00 per transaction, thereafter.

Goodman and his wife, Kathleen Goodman, were "unlicensed" at the time of the transaction, recovery is available from the Fund because the Goodmans were the unlicensed employees of a real estate broker. I will address each argument in turn.

All parties, including the Commission, agree that at the time Goodman obtained the plaintiffs' deposit, his status was "inactive" and "unrenewed". They disagree regarding whether that status is tantamount to being "unlicensed," for which compensation under *N.J.S.A.* 45:15-34 is not available. Predictably, the Commission urges that since neither Richard Goodman nor his wife Kathleen Goodman, were "licensed" either in 1992 (when the plaintiffs delivered the deposit to Richard's Realty), or in 1996 (when Mr. Goodman promised to make restitution), the plaintiffs are without recourse as against the Fund. It contends: (1) that the remedial reach of the statutory Fund extends *only* to those members of the public who lost money because of the misconduct of a real estate *licensee* or an unlicensed employee of a *licensed real estate broker;* and (2) that the term "inactive" lacks legal significance, but instead is a mere "administrative convenience" which indicates only that a *previously licensed* broker will not be required to undergo the same training, schooling or testing that would otherwise be required of a new applicant for licensure, provided that he "renews" within a two year window. *N.J.S.A.* 45:15-9. According to the Commission, this interpretation is bolstered by regulations which provide that:

> Each broker who *ceases to be active* shall immediately return to the Commission his license, and licenses of all salespersons and broker-salespersons *for cancellation.* (Emphasis supplied).

*N.J.A.C.* 11:5-3.9(a).

In contrast, plaintiffs assert that an "inactive" broker or salesperson must be viewed differently than an unlicensed broker in order to effectuate the salutary purpose of *N.J.S.A.* 45:15-34, which, they claim, is to protect the public from transgressions by those individuals whose integrity and training had theretofore been investigated and sanctioned by the Real Estate Commission. Consequently, for reasons of sound public policy, plaintiffs argue

that a mere failure to renew one's license should not be equated with an "unlicensed" person whose background and qualifications have never been scrutinized by the Commission. To further support their position, plaintiffs point both to *N.J.S.A.* 45:15-9, which mandates that a broker or sales agent must go through the entire license application process *only after* failing to renew for more than two years without justification, and to the fact that the Commission itself classifies those who fail to renew as "inactive" rather than "unlicensed". Finally, Plaintiffs argue that because *N.J.S.A.* 45:15-34 is remedial in nature, it must be construed liberally in order to further the intent and purpose of the Act—to provide limited financial protection to those persons who have been victimized by State "certified" brokers or salespersons.

Although I agree that *N.J.S.A.* 45:15-34 should be construed liberally, I cannot embrace the plaintiffs' interpretation. "A well established tenet of statutory construction is that a statute should be construed sensibly and in furtherance of the underlying legislative purpose." *The Thomas Group, Inc. v. Wharton Senior Citizen Housing, Inc.*, 163 *N.J.* 507, 517, 750 *A.*2d 743 (2000); *citing Brooks v. Odom*, 150 *N.J.* 395, 401, 696 *A.*2d 619 (1997). Where a statute is clear and unambiguous, the court "need delve no deeper than the act's literal terms to divine the Legislature's intent." *State v. Butler*, 89 *N.J.* 220, 226, 445 *A.*2d 399 (1982). The Legislature, in establishing the Real Estate Guaranty Fund, sought to provide recovery to those aggrieved ". . . in a real estate brokerage transaction by a licensed real estate broker, broker-salesperson or salesperson of an unlicensed employee of a real estate broker ..." *N.J.S.A.* 45:15-34. By its very terms, *N.J.S.A.* 45:15-34 makes clear that recovery is limited to those persons who have entrusted their deposit monies to licensed persons, or, at the very least, unlicensed employees of a licensed broker.

Plaintiffs would have this court extend recovery under the Act to those aggrieved by brokers or agents listed in the Commission's licensing records as "inactive" as a result of their failure to pay

their renewal fee. Neither the statutory scheme (or the regulations enacted thereunder), nor the legislative history lend any support to plaintiffs' strained construction of *N.J.S.A.* 45:15–34, which, in my opinion would result in an unwarranted and unintended extension of the Act. A licensed broker or agent is mandated pursuant to *N.J.S.A.* 45:15–15 to remit an annual renewal fee in order to maintain their respective licenses. Otherwise, the broker or agent "ceases to be active," and "shall immediately return to the Commission his license and licenses of all salespersons and broker salespersons *for cancellation.*" *N.J.A.C.* 11:5–3.9(a) (*emphasis supplied*). This language is consistent with the Commission's view that such a person's license is deemed to be *canceled* as of that date, which status cannot be altered by the fact that the broker may not have obeyed a non—discretionary, administrative directive. Nor does the Commission's administrative classification of a broker who fails to timely renew his license as "inactive" in any way mislead the public[5] which is charged, at least implicitly, pursuant to *N.J.S.A.* 45:15–34, with the responsibility of ensuring that they deposit monies into the hands of a broker or salesperson who holds a *current,* active license.

The provisions of *N.J.S.A.* 45:15–15 make clear that all brokers, broker-salespersons, and salespersons are required to renew their respective licenses prior to the expiration dates. While the failure to renew within two years after the expiration of the license requires only the repayment of late fees for the issuance of a renewal license, it results in an automatic "inactive" and "unrenewed" notation on a licensee's record until such time as payment is made. An individual on "inactive" and "unrenewed" status has no authority to conduct or participate in any real estate transaction. Even a cursory inspection of the license itself would reveal that its renewal, or expiration date, had lapsed.

---

[5] During oral argument it was represented by the Commission that any person inquiring as to the status of a broker or salesperson would be informed of any delinquency, using the categories articulated *infra,* note 2. No contrary evidence was submitted by the Plaintiffs.

■ Similarly unpersuasive is plaintiffs' argument that by acting as an escrow agent for the deposit moneys, Goodman "became" a broker within the meaning of *N.J.S.A.* 45:15–34. The plaintiffs' argument is premised on an incorrect application of the Chancery Division's decision in *Brody v. Alfieri*, 179 *N.J.Super.* 485, 432 *A.*2d 567 (Ch.Div.1981). In *Brody, supra,* Judge Gaulkin held under the circumstances of that case, that the wrongful conduct of a real estate broker whose license had been forfeited by the Real Estate Commission, but who was permitted to engage in real estate activities while winding down his business, did subject the Guaranty Fund to liability, despite the unlicensed status of the broker. *Brody* was premised on the Commission's failure to "strip [the broker] of the authority granted to him under his broker's license," which unreasonably jeopardized members of the public by tacitly encouraging them to engage in business with a person already known by the Commission to be unscrupulous. Because the limited restrictions imposed on the broker's authority were inadequate, the public-at-large was unreasonably exposed to a significant risk of loss, leading Judge Gaulkin to conclude that extending the Fund's protections, despite the unlicensed status of the broker, was equitably justified. *Id.* at 491, 432 *A.*2d 567.

The facts of the instant case are plainly inapposite. There simply is no basis upon which I could reasonably conclude that the Commission, through its conduct or omissions, sanctioned Goodman's continuing brokerage activities. The Commission's failure to begin its investigation until five months after Goodman's failure to renew his license, standing alone, is unpersuasive. Plaintiffs are unable to point to any evidence in the Commission's investigation file or from any other source, that the Commission was even aware of any possible malfeasance by Goodman (other than the mere failure to renew his license) prior to his unlawful conversion of plaintiffs' deposit monies.[6]

---

[6] The specific need to explore: (1) the Commission's knowledge of Goodman's activities; (2) what, if any action, the Commission chose to take in this regard; (3) when it was taken; and (4) whether the Commission engaged in conduct that

■ Plaintiffs raise one other derivative argument, that *N.J.S.A.* 45:15–16.47 (The Real Estate Sales Full Disclosure Act) authorizes a direct cause of action by "[a]ny person who suffers any ascertainable loss as the result of the failure of another to comply fully with the provisions of this act." They urge that since Goodman failed to comply with the applicable Regulations which require, *inter alia,* that an inactive broker surrender his license for cancellation [N.J.A.C. 11:5–3.9(a)], that transgression, when read in *pari materia* with the Guaranty Fund legislation, justifies access to the Guaranty Fund. This argument reflects a fundamental misunderstanding of the both legislative schemes. Unlike the Guaranty Fund, which, admittedly, is remedial in nature, the Real Estate Sales Full Disclosure Act was intended only to regulate the out—of—state sales of land to New Jersey consumers. Assuming, *arguendo,* that *N.J.S.A.* 45:15–16.47 may be read in *pari materia* with *N.J.S.A.* 45:15–34, the mere failure to renew a broker's license cannot logically be considered comparable to a "failure . . . to comply fully" with the provisions of the Act, since that regulatory scheme specifically acknowledges that brokers may well decline to renew their licenses for any number of reasons for up to two years with no adverse consequences. *N.J.S.A.* 45:15–9. Moreover, even assuming that plaintiffs could demonstrate that such a purported violation proximately resulted in an ascertainable loss, there is nothing within the language of the New Jersey Guaranty Fund statute, nor within the legislative history to suggest a legislative intent that the Fund afford compensation under these circumstances. Without persuasive evidence of some malfeasance on the part of the Commission, I am unwilling to subject the Fund to liability.

■ Lastly, I turn to plaintiffs' argument that they are within the class of persons protected by the Guaranty Fund because Richard and Kathleen Goodman can be considered unlicensed

---

affirmatively placed the public at risk, prompted me to deny the parties' earlier cross—motions for summary judgment. Despite the opportunity to take further discovery on these *Brody* type issues, no proffer along these lines was made.

employees of a real estate broker. Plaintiffs argue that the definition of a "real estate broker" contained in *N.J.S.A.* 45:15–3 does not explicitly require the broker to be licensed. According to plaintiffs, as unlicensed employees of a real estate broker, both Goodmans both fall within the purview of *N.J.S.A.* 45:15–34. I disagree. While *N.J.S.A.* 45:15–3 does not specifically reference a licensing requirement within the statutory definition of "broker," *N.J.S.A.* 45:15–1 is precise in its admonition that "[n]o person shall engage either directly or indirectly in the business of a real estate broker ... *without being licensed* ..." (emphasis supplied). As the Commission points out, licenses are issued to brokers in their individual capacity as well as to entities pursuant to *N.J.S.A.* 45:15–9. Absent any historical or other support for plaintiffs' contention that the Legislature intended to protect the public from the actions of unlicensed employees of *unlicensed* real estate brokers, I decline to hold the Fund accountable.

### III. Conclusion

For the foregoing reasons, I am satisfied that plaintiffs are not entitled to recover their lost deposit monies (or any portion thereof) from the Real Estate Guaranty Fund. Summary judgment is therefore granted in favor of the New Jersey Real Estate Commission, dismissing the Complaint [7] and denying plaintiffs' cross—motion for summary judgment. Counsel for the Commission shall submit an appropriate form of Order under the five-day rule, incorporating this opinion by reference.

---

[7] Since a judgment in favor of the Commission is to be entered in accordance with this opinion, I need not pass on the Commission's assertion that plaintiffs' recovery is limited to $10,000.00, nor will I address the Commission's further contention that plaintiffs' own purported failure to comply with the Fund's regulatory and procedural requirements precludes them from any recovery.