J. R. CHRIST CONSTRUCTION CO., INC., A CORPORATION OF THE COMMONWEALTH OF PENNSYLVANIA, AND NA-JA CONSTRUCTION CORPORATION, A CORPORATION OF THE COMMONWEALTH OF PENNSYLVANIA, JOINTLY, SEVERALLY, AND IN THE ALTERNATIVE, PLAINTIFFS-APPELLANTS, v. WILLETE ASSOCIATES, A CORPORATION OF THE STATE OF NEW JERSEY, AND WILLETE ACRES, INC., A CORPORATION, DEFENDANTS-RESPONDENTS.

Argued May 10, 1966—Decided July 8, 1966.

474

*Mr. Eugene W. Landy* argued the cause for appellants (*Messrs. Landy, Bonello & Weinstein,* attorneys; *Mr. Richard L. Bonello* on the brief).

*Mr. Harry Schaffer* argued the cause for respondent (*Mr. Nathaniel Goldring,* attorney).

The opinion of the court was delivered by

PROCTOR, J. The primary issue on this appeal is whether the statutory provisions governing mechanics' liens (*N. J. S.* 2A:44–64 *et seq.*) permit the plaintiffs to establish a lien for installing sewers, pursuant to a contract with a developer, underneath streets laid out on a subdivision map.

Defendant, Willete Associates, owned a large tract of vacant land in Middletown Township, Monmouth County, which it planned to develop by the construction of single family dwellings to be known as Willete Acres.[1] After obtaining the township's approval to subdivide the tract into 106 lots, with streets to run through the development in accordance with the filed map (*N. J. S. A.* 40:55–1.1 *et seq.*), defendant contracted with the plaintiff, NA-JA Construction Corporation, for the construction of storm and sanitary sewers throughout the development. The other plaintiff, J. R. Christ Construction Co., Inc., was also involved in this project although it did not contract directly with defendant. Both NA-JA and J. R. Christ Construction Co., Inc. are apparently wholly owned by James R. Christ. According to the terms of the contract sewer mains were to be laid underneath the streets shown on the map. Small laterals were to be run

---

[1] The complaint also named Willete Acres, Inc. as a defendant. However, while the name of the development was Willete Acres, there is apparently no business entity using that name.

from the mains to just inside the curb lines of the various building lots. At the time the contract was executed the streets shown on the map had not yet been completed or opened to public use.

The contract between NA-JA and the defendant was signed on August 13, 1963, and construction was commenced in the latter part of that month. Notices of intention to supply materials or perform labor, prerequisite to the establishment of a mechanic's lien (*N. J. S.* 2A:44–71 to 74), were filed by J. R. Christ Construction Co., Inc. on July 22, 1963, and by NA-JA on August 28, 1963. According to the plaintiffs, when work on the project ceased on May 26, 1964, the cost for work and materials totalled about $350,000. However, of this total only $800 was allocable to the small laterals running from the sewer mains to each lot.

Plaintiffs claim they are owed $264,204.59 and on June 22, 1964, they filed a mechanic's lien claim for that amount in the Monmouth County Clerk's office pursuant to *N. J. S.* 2A:44–91. On July 2, 1964 they began a suit in the Law Division of the Superior Court, as provided in *N. J. S.* 2A:44–97, to enforce this claim.

Between the time the lien claim was filed and the time suit was commenced, defendant obtained a surety bond in favor of the plaintiffs for double the amount of the lien claim (*N. J. S.* 2A:44–117). A judge of the county court then ordered that defendant's land and buildings be released from any liens arising from plaintiffs' claim (*N. J. S.* 2A:44–118). This procedure is designed to keep a defendant's land from being tied up in litigation while at the same time assuring that adequate funds will be available if a plaintiff succeeds in establishing a mechanic's lien.

Defendant moved to strike the mechanic's lien claim and discharge the bond, and plaintiffs countered with a motion for summary judgment. After both motions were consolidated for hearing the trial court held that the installation of the laterals could give rise to a lien but that no lien could result from the installation of the sewer mains under public streets.

He then ordered that the surety bond be reduced to $1,600, double the cost of the laterals running from the mains to each lot. We certified plaintiffs' appeal on our own motion prior to argument in the Appellate Division.

The relevant portion of *N. J. S.* 2A:44–66, which governs the creation of mechanics' liens, provides:

"Except as otherwise provided in this article, the property herein enumerated shall be liable for the payment of any debt contracted or owing to any person for any of the purposes herein specified, which debt shall be a lien upon such property; that is to say:

a. Every building, together with the land whereon it stands, including the lot or curtilage whereon the same is erected, for labor performed or materials furnished for the erection, construction or completion of such building, or any alteration or repair thereof or addition thereto; * * *."

Plaintiffs contend that the work and materials they provided should under the statute result in a lien on defendant's lots and the houses constructed thereon. Defendant contends that the terms of the statute are not broad enough to encompass the construction of sewers because the statute refers to the construction of a "building" and because the work in this case was done in the streets rather than on building lots.

Mechanics' lien statutes are remedial and are designed to guarantee effective security to those who furnish labor or materials used to enhance the value of the property of others, and, where the terms of the statute reasonably permit, the law should be construed to effect this remedial purpose. *Davis v. Mial,* 86 *N. J. L.* 167, 169 (*E. & A.* 1914). No reported decision in this State has decided whether the construction of sewer mains under public roads can be the basis of a mechanic's lien. However, in applying the statute our courts have not required that materials or labor must be incorporated directly into a building before a mechanic's lien can arise. *Davis v. Mial, supra.* Thus, the services provided by an architect are covered by the statute. *Friedman v. Stein,* 4 *N. J.* 34, 41 (1950); *Turck v. Allard,* 87 *N. J. L.* 721, 722 (*E. & A.* 1915); *Mutual Benefit Life Insurance Co. v. Row-*

*and,* 26 *N. J. Eq.* 389, 397 (*Ch.* 1875). One who transports construction materials to the building site is entitled to a lien for the transportation costs. *Central R. R. Co. of N. J. v. Gallena-Poole,* 107 *N. J. Eq.* 267, 268–269 (*Ch.* 1930), affirmed o. b. 110 *N. J. Eq.* 559 (*E. & A.* 1932); *Davis v. Mial, supra; Hammill v. Commercial Casualty Ins. Co.,* 5 *N. J. Misc.* 685, 686–687, 137 *A.* 884 (*Sup. Ct.* 1927); *West Jersey & S. R. R. Co. v. Cape May Co.,* 100 *N. J. Eq.* 181, 182 (*Ch.* 1926); *Improved B. & L. Asso. v. Larkin,* 88 *N. J. Eq.* 52, 59 (*Ch.* 1917). And a watchman who guards the building during its construction is entitled to a lien for the services he performs. *Improved B. & L. Asso. v. Larkin, supra,* at *p.* 59. The rationale underlying these cases is that work done which is reasonably necessary for the ultimate completion of a building should give rise to a mechanic's lien, even though the type of service provided is not as directly incorporated into the building as would be, for instance, the boards supplied by a lumber yard or the work performed by a carpenter.

There can be no dispute that provisions for sewage disposal are required to make homes habitable in a manner consistent with reasonable standards of comfort and health. In *Ladue Contracting Co. v. Land Development Co.,* 337 *S. W. 2d* 578 (*Mo. Ct. of App.* 1963), a developer of 12 residential lots engaged a contractor for the construction of, among other things, gutters and sanitary sewers under the street which the developer had laid out adjacent to the building lots. The court rejected the claim that the contractor was not entitled to a mechanic's lien under a statute similar to New Jersey's and said:

"It is much too late in these modern times to embrace arguments that the [gutters and sanitary sewers] ought not to be treated as essential to the comfortable and convenient use of the dwellings. * * * [D]wellings without * * * efficient sewer systems are just no longer constructed in urban areas. To hold that the [gutters and sanitary sewers] are outside the terms of the lien statute would be to turn the clock back to

another century." *Id.,* at *p.* 585. *Cf. Safeway Trails, Inc. v. Furman.* 41 *N. J.* 467, 477 (1964).

That the plaintiffs' work in this case was performed under land to be used as public streets, rather than on building lots, should not bar the plaintiffs from the statute's benefit where, as here, the work not only enhanced the value of defendant's land but was also necessary to make the homes being constructed suitable for habitation. In *Mitford v. Prior,* 353 *F. 2d* 550 (9 *Cir.* 1965) a civil engineer laid out the streets of a subdivision project and designed the sewer, water and drainage systems. In allowing a mechanic's lien the court stated "that a mechanic's lien will attach to property for an improvement not placed thereon if it has a physical or beneficial connection therewith and is essential to the convenient and comfortable use of the premises." *Id.,* at *p.* 553. Accord, *Application of Bradwood Realty, Inc.,* 251 *N. Y. S. 2d* 315, 43 *Misc. 2d* 374 (*Sup. Ct.* 1964); *Speer Hardware Co. v. Bruce Bros.,* 105 *Ark.* 146, 150 *S. W.* 403, *L. R. A., N. S.* 354 (*Sup. Ct.* 1912); *Beatty v. Parker,* 141 *Mass.* 523, 6 *N. E.* 754 (*Sup. Jud. Ct.* 1886); see 36 *Am. Jur., Mechanics' Liens,* § 64, *p.* 54; *cf. Poynter v. Fargo,* 48 *Idaho* 271, 281 *P.* 1111 (*Sup. Ct.* 1929); *Williams, Belser & Co. v. Rowell,* 145 *Cal.* 259, 78 *P.* 725 (*Sup. Ct.* 1904).

*N. J. S.* 2A:44–66(a) allows a mechanic's lien for materials and labor provided for the "erection, construction or completion" of a building. In the present case the construction of sewers by the plaintiffs was an integral part of the home building program on Willete Acres. For purchasers of modern residential properties, houses without adequate means of sewage disposal could no more be considered completed than could houses without roofs. Moreover, there is nothing in the statute which requires that work necessary for the completion of a building be performed solely on the lot on which that building is being erected. We hold therefore that where a developer engages a contractor to install a sewer system in a subdivision project, the contractor, if he complies with the statutory procedures, is entitled to a mechanic's lien

against the developer's property for the cost of labor and materials furnished.

In 1964 the Legislature passed *Assembly Bill* 536, subsequently vetoed by the Governor, which would have amended the mechanic's lien law to specifically allow, *inter alia,* a lien for the "installation of any sewer or storm drain lines." Defendant argues that the introduction and passage of this bill indicates the legislators were of the opinion that the present law does not allow a lien for this type of work. We do not believe that these circumstances are of material assistance to our determination. It may be that the legislators felt the present statute was not broad enough to give a lien for the construction of sewers. On the other hand, they may have thought the amendment would merely clarify and make more specific a right which already existed. In any case, the opinions of legislators in 1964 are not instructive in determining the intent of the Legislature which enacted the original law many years earlier. See *Fraser v. Robin Dee Day Camp,* 44 *N. J.* 480, 486 (1965).

It has been suggested that allowing mechanics' liens for the construction of sewers under public streets would result in interference with the public's right of way if and when such liens were enforced. We think this view is based on a misconception. Enforcement of liens arising from the installation of sewers would not result in the sale of streets for private use. Rather, such liens are enforced by selling the land and buildings abutting the street, the land and buildings which benefit from the improvements. In a technical sense, the streets also would be sold since in New Jersey abutting land owners usually own the fee up to the center of the street. See, *e. g., Brill v. Eastern New Jersey Power Co.,* 111 *N. J. L.* 224 (*E. & A.* 1933) ; *Bork v. The United New Jersey Railroad and Canal Company,* 70 *N. J. L.* 268 (*E. & A.* 1903). However, the fee ownership of land dedicated to public use is considered only a bare legal title. See *State by State Highway Com'r. v. Cooper,* 24 *N. J.* 261, 266–267 (1957). Thus, a

purchaser at a lien sale has no more right to interfere with the public easement than would any other type of purchaser.[2]

Defendant contends that even if the construction of sewers can give rise to a valid mechanic's lien, the plaintiffs in this case have not complied with certain statutory prerequisites and have, in addition, willfully and fraudulently overstated the amount of money still owing to them. The trial court found that these contentions raise factual issues which could not be decided on the basis of the present record. We agree and direct that the case be remanded in order that the trial court may resolve these questions.

Reversed and remanded.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO — 6.

*For affirmance* — None.

---

[2] The possibility of any interference with a public easement is academic in the present case since defendant, as noted earlier, obtained a surety bond in favor of the plaintiffs for twice the amount of the lien claim, and thus caused any liens against his land to be discharged.