779 A.2d 1110 (2001)
TRIPLE "R" ENTERPRISES, INC., Plaintiff-Respondent,
v.
Santo PEZOTTI t/a International Construction Management, Defendants,
MOUNT HOLLY EQUITIES, L.L.C., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued August 28, 2001.
Decided September 25, 2001.
Steven H. Griffiths, Philadelphia, PA, argued the cause for appellant (Frey, Petrakis, Deeb & Blum, attorneys; Mr. Griffiths, on the brief).
Carl W. Erler, Brick, argued the cause for respondent (Berry, Kagan, Sahradnik, Kotzas & Riordan, Toms River, attorneys; Seymour J Kagan, of counsel; Mr. Erler, on the brief).
*1111 Before Judges CARCHMAN and LESEMANN.
The opinion of the court was delivered by CARCHMAN, J.A.D.
This appeal requires us to interpret N.J.S.A. 2A:44A-10 of the Construction Lien Law, N.J.S.A. 2A:44A-1 to -38 (the CLL), and to determine the maximum lien liability of a property owner against whom a lien has been filed. We conclude that such exposure is limited to contract funds remaining after the receipt of such lien despite the filing of prior liens and payments made after the payment of such prior liens. We reverse and remand.
We briefly set forth the facts relevant to this narrow issue. Defendant Mt. Holly Equities, L.L.C., the owner of commercial real estate, entered into a construction contract with the general contractor, defendant International Construction Management (ICM). Plaintiff Triple "R" Enterprises, Inc. was a paving subcontractor. The total contract price between Mt. Holly and ICM was $1,281,162, and of that amount, $210,012 was allocated to the paving subcontract. Although Mt. Holly disputes the bona fides of the actual contract amounts, for purposes of the issue before us, we consider the amounts asserted by plaintiff.
The general contract was entered into on March 13, 1996, and on December 17, 1996, a roof framing contractor, Tamburri Associates, filed a lien claim under the CLL in the approximate amount of $6,000. Assured that the project was proceeding smoothly, Mt. Holly ultimately settled that claim.[1] Additional regular contract payments were made to ICM. Apparently, ICM was not paying subcontractors, because in March and April 1997, additional subcontractors filed liens under the CLL. Plaintiff's lien for $115,530.28 was filed on March 27, 1997, and was later amended to $110,734. Even though the project was near completion, ICM abandoned the project, and Mt. Holly started dealing directly with the subcontractors. ICM thereafter filed for bankruptcy.
In June 1997, plaintiff filed an action to enforce its lien. Because there were numerous other actions filed by subcontractors, the actions were consolidated and an order was entered in September 1998, determining that all lien claimants would be paid out of any lien fund on a pro rata basis. Following motions for summary judgment, the motion judge determined that the value of the lien fund was $195,000.03 and granted summary judgment in favor of plaintiff for the amount of its lien claim of $110,734. In concluding that the amount of the lien fund was $195,000.03, the motion judge noted that the lien fund must be determined as of the time of the filing of the Tamburri lien, not as of the filing of plaintiff's lien. Mt. Holly challenges both that determination and the quantum of plaintiff's lien. As to the latter issue, Mt. Holly claims that there are factual issues as to the quality of plaintiff's work, as well as to the amount of the claim.
We briefly dispose of the latter issue by observing that Mt. Holly did not raise these issues below, and we decline to consider or address them on appeal. See R. 2:6-2(a)(1); State v. Baluch, 341 N.J.Super. 141, 184-85, 775 A.2d 127 (App.Div. 2001); Lucia v. Monmouth Med. Ctr., 341 N.J.Super. 95, 102-03, 775 A.2d 97 (App. Div.2001); Gilborges v. Wallace, 153 *1112 N.J.Super. 121, 143, 379 A.2d 269 (App. Div.1977).
We now address the statutory issue. N.J.S.A. 2A:44A-10 provides, in relevant part:
Except as set forth in sections 15 and 21 of this act, the maximum amount for which an owner will be liable or [sic] an interest in real property subject to a lien under this act for one or more lien claims filed pursuant to this act shall not be greater than:
a. In the case of a lien claim filed by a contractor, the total amount of the contract price of the contract between the owner and the contractor less the amount of payments made, if any, prior to receipt of a copy of the lien claim pursuant to section 7 of this act, by the owner to the contractor or any other claimant who has filed a lien claim or a Notice of Unpaid Balance and Right to File Lien pursuant either to a contract with the contractor and any subcontractor or supplier, or a contract between a subcontractor of the contractor and any supplier or other subcontractor; or
b. In the case of a lien claim filed by a subcontractor or supplier, the amount provided in subsection a. of this section, or the contract price of the contract between the contractor or subcontractor and the subcontractor or supplier, as applicable, pursuant to which the work, services, materials or equipment is provided by the subcontractor or supplier, less the amount of payments made, if any, prior to receipt of a copy of the lien claim pursuant to section 7 of this act, to the contractor or supplier or any other claimant who has filed a lien claim or a Notice of Unpaid Balance and Right to File Lien pursuant to a contract with such subcontractor or supplier, whichever is less.

[N.J.S.A. 2A:44A-10 (emphasis added) (footnotes omitted).]
The statutory scheme applies to claims made by the contractor against the owner (subsection a), and to claims made by a subcontractor against the contractor (subsection b). The amount of the lien fund in the first instance results from subtracting the amount of monies paid to the contractor by the owner prior to receipt of "the lien claim" from the contract price. In the second circumstance, the calculation is based on the contract price between the contractor and the subcontractor. The lesser of the two resulting sums will be utilized to establish the lien fund. The issue here is whether the first filing of any lien claim freezes the consideration of the amount of payments made after receipt of the first lien claim. To restate the issue in terms of the facts presented, we consider whether the lien fund was established from the filing of plaintiff's lien in March 1997, or whether it was established from the time of the filing of Tamburri's lien in December 1996. This is particularly relevant because Mt. Holly made payments to ICM subsequent to the filing of the Tamburri lien and prior to plaintiff's filing which, if considered, would reduce the amount of the lien fund. The trial judge considered the critical filing to be the Tamburri lien.
Plaintiff's interpretation of the statute is simply stated. It argues that the lien fund is created by consideration of the amounts as of the time of filing of the Tamburri lien, rather than the filing of its own lien. It argues that the lien fund is created at the time of the filing of the "first" lien, as that filing puts the owner on notice that the general contractor is not paying the subcontractors.
We first restate the polestar of any statutory analysis-a statute should be construed sensibly and in furtherance of its underlying legislative purpose. Thomas Group, Inc. v. Wharton Senior Citizen *1113 Hous., Inc., 163 N.J. 507, 517, 750 A.2d 743 (2000); Brooks v. Odom, 150 N.J. 395, 401, 696 A.2d 619 (1997). Applying this principle and the equally accepted principle that interpretation of a statute requires that we first look to the language of the statute to discern its intent, In re Pub. Serv. Elec. & Gas Co., 167 N.J. 377, 383-84, 771 A.2d 1163 (2001); McDonald v. Lederle Labs., 341 N.J.Super. 369, 375, 775 A.2d 528 (App.Div.2001), we consider plaintiff's position to be contrary to the clear wording of the statute. Both subsections a and b allow for a credit for "payments made, if any, prior to receipt of a copy of the lien claim" to the contractor or supplier. N.J.S.A. 2A:44A-10(a), (b). The use of the definite article "the," as opposed to "a" or "first," demonstrates a legislative understanding and intent that a contractor's filing of its lien claim would not only constitute notice of such a claim, but would also provide the triggering mechanism to protect funds remaining in the hands of the owners to satisfy such a lien. The language is clear and explicit. To adopt plaintiff's view would allow a subcontractor to take no lien action and simply rely on an earlier filing even though, as here, the earlier lien claim was easily disposed of and the owner made appropriate subsequent payments to the contractor for work performed. While the CLL is designed to protect, among others, subcontractors and suppliers for their efforts in increasing the value of the property, it cannot be interpreted to impose a penalty of double payment on an owner who, acting in good faith, makes payments to a contractor who later defaults on its obligations to a subcontractor. We note that there is no allegation that the payments made to ICM after the filing of the Tamburri lien were not earned, due, or made in good faith. We reject the view that the simple filing of a lien by a subcontractor establishes the lien fund commencement date for a subsequently filed lien by another subcontractor.
The CLL is a lien statute which, consistent with the general protections afforded by such statutes, is remedial and "`designed to guarantee effective security to those who furnish labor or materials used to enhance the value of the property of others.'" Thomas Group, supra, 163 N.J. at 517, 750 A.2d 743 (quoting J.R. Christ Constr. Co. v. Willete Assocs., 47 N.J. 473, 477, 221 A.2d 538 (1966)). In Thomas, the Supreme Court determined that under the CLL, a contractor was entitled to file a lien even though all work had not been completed and it had not provided necessary documentation regarding its activities. The Court held that the contractor's lien right extended to the work that the contractor had actually performed.
Following the Court's decision in Thomas, we decided Legge Industries v. Joseph Kushner Hebrew Academy, 333 N.J.Super. 537, 756 A.2d 608 (App.Div. 2000). In Legge, we addressed the more relevant issue of a property owner's maximum liability under N.J.S.A. 2A:44A-10. In Legge, the masonry subcontractor, Pond, defaulted, and its suppliers, plaintiffs, filed a lien under the CLL. In challenging the lien fund available to plaintiffs, plaintiffs alleged, among other things, that the owner had made improper advance payments to Pond which thus depleted the lien fund. Plaintiffs also claimed an interest in the retainage provided for under the terms of the contract. We reversed the trial judge's grant of summary judgment to the owner, finding that there was a factual issue as to the nature of the payments and whether Pond had actual knowledge that plaintiffs had not been paid. We framed the issue this way: "Is the `lien fund' that is available to satisfy suppliers, and thus the property owner's *1114 maximum liability to those claimants, reduced by premature or otherwise unearned payments to the prime contractor, as long as they were made before the suppliers' liens were filed?" Legge, supra, 333 N.J.Super. at 547, 756 A.2d 608. We answered that question in the negative and said, "[w]e hold that a property owner's maximum liability under the Lien Law the `lien fund'is not reduced by payments to the contractor that were not earned and due before the suppliers' liens were filed." Ibid. We reiterate that nothing in the record before us suggests that subsequent payments made to ICM after the filing of the Tamburri lien were not earned or appropriate. As we noted in Legge, "`[u]nderlying the lien fund concept is the principle that an owner, contractor, or subcontractor should not be compelled to pay twice for the same work or services when a valid lien claim is filed.'" Id. at 548, 756 A.2d 608 (quoting Thomas Group, supra, 163 N.J. at 521, 750 A.2d 743). Such is the case here.
We reject plaintiff's contention and the finding of the trial court that the lien fund accrues as of the time of the filing of the Tamburri lien. To the contrary, the lien fund accrues from the March 27, 1997 lien filing, and should be calculated accordingly. We thus reverse that portion of the November 19, 1999 order establishing a lien fund of $195,000.03 and remand to the Law Division to recompute the lien fund consistent with this opinion. We affirm the order of November 19, 1999, entering judgment in favor of plaintiff in the amount of $110,734.
Affirmed in part; reversed and remanded in part. We do not retain jurisdiction.
NOTES
[1] We were advised at oral argument that the claim was settled prior to entry of the judgments under review.