790 A.2d 954 (2002)
347 N.J. Super. 511
AEG HOLDINGS, L.L.C., t/a Atlantic Building, Plaintiff-Respondent,
v.
TRI-GEM'S BUILDERS, INC. and Brand Jewelers, Defendants, and
L & N Enterprises-Hammonton, L.L.C., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted January 15, 2002.
Decided February 7, 2002.
Frank G. Olivo, attorney for appellant.
Mandelbaum, Salsburg, Gold, Lazris, Discenza & Steinberg, West Orange, attorneys for respondent (Richard M. Salsburg, of counsel; Stuart Gold, on the brief).
Before Judges WEFING, CIANCIA and LESEMANN.
The opinion of the court was delivered by CIANCIA, J.A.D.
This appeal arises out of a dispute concerning the proper interpretation of the Construction Lien Law, N.J.S.A. 2A:44A-1 to -38 (the Act). Appellant L & N Enterprises (L & N) is the owner of a commercial property. It contracted with defendant Tri-Gem's Builders, Inc. (Tri-Gem's) to construct an addition to the property. The contract price was $198,200. Tri-Gem's, in turn, hired plaintiff AEG Holdings, L.L.C. (AEG) as a subcontractor for certain work.
L & N made a series of payments to Tri-Gem's totaling $129,604. Tri-Gem's went into bankruptcy without finishing the job. Tri-Gem's also failed to pay anything to its subcontractor, AEG. A construction *955 lien was filed by AEG against L & N in the amount of $126,717, which was undisputedly owed to AEG for the work it had performed. On cross-motions for summary judgment, the trial court awarded AEG the difference between the $198,200 contract price agreed upon between L & N and Tri-Gem's, and the amount paid by L & N to Tri-Gem's prior to the filing of AEG's lien i.e., $198,200 minus $129,604, which equals $68,596. On the facts here presented, we believe the trial court correctly implemented the relevant provisions of the Act.
N.J.S.A. 2A:44A-3 provides in relevant part:
Any contractor, subcontractor or supplier who provides work, services, material or equipment pursuant to a contract, shall be entitled to a lien for the value of the work or services performed, or materials or equipment furnished in accordance with the contract and based upon the contract price, subject to the provisions of sections 9 and 10 of this act.
Section 9, N.J.S.A. 2A:44A-9, limits the amount of the lien claim to "the contract price, or any unpaid portion thereof, whichever is less, of the claimant's contract for the work, services, material or equipment provided."
Section 10, N.J.S.A. 2A:44A-10, provides in part that the lien claim "shall attach to the interest of the owner from and after the time of filing of the lien claim." Subsections a and b, when read together, limit the property owner's liability vis-à-vis a subcontractor to the lesser of what remains unpaid on the prime contract or on the subcontract, prior to receipt of the lien claim.[1]
Appellant's position is essentially that Tri-Gem's left the job without significant work being completed and, therefore, L & N will have to pay additional sums to others to have the job finished. Accordingly, if it is obligated to pay AEG $68,596, L & N will end up paying in excess of the total original contract price. This, according to L & N, violates the proscription which courts have read into the Act limiting a property owner's lien liability to the contract price. Appellant argues the rule should be that as long as the property owner has paid the contractor more than the lien claim of the subcontractor, the property owner has no obligation to the subcontractor. In our view, appellant's interpretation of the Act runs counter to the legislative policy reflected therein and would produce consequences never intended by the Legislature.
The Act "must be read sensibly and consistent with the law's overall intent to permit contractors to file liens and thus protect the value of the work they have provided." Thomas Group v. Wharton Sr. Housing, 163 N.J. 507, 517, 750 A.2d 743 (2000). Lien statutes are "remedial and are designed to guarantee effective security to those who furnish labor or materials used to enhance the value of the property of others, and, where the terms of the statute reasonably permit, the law should be construed to effect this remedial purpose." J.R. Christ Constr. Co., Inc. v. Willete Assoc., 47 N.J. 473, 477, 221 A.2d 538 (1966) (citations omitted); accord Thomas Group, supra, 163 N.J. at 517-518, 750 A.2d 743; Triple "R" Enterprises, Inc. v. Pezotti, 344 N.J.Super. 31, 37, 779 A.2d 1110 (App.Div.2001).
Appellant's interpretation of the law protects property owners, but it does not protect lien holding subcontractors. Even with the trial court's decision, AEG is only receiving a little more than half of what it is legitimately owed. If there are *956 multiple subcontractors on a job and, by way of example, each claims an amount equal to ten percent of the total contract price, a property owner would owe nothing to any of them under appellant's interpretation of the Act so long as the property owner had paid the contractor more than ten percent of the total price. We are confident that the Legislature never intended such a draconian application of the Act.
While it is true there is language in our case law that a property owner should not be made to pay twice, see e.g., Thomas Group, supra, 163 N.J. at 521, 750 A.2d 743, what is meant by that is that the property owner is "never subject to liens in an amount greater than the amount unpaid by the owner to its prime contractor at the time the lien claim is filed by one claiming a lien through that prime contractor." Ibid. Appellant points out that a property owner under this interpretation may very well end up paying more for the finished job than the original contract price. The property owner, however, has means to guard against that result. What appears to have happened here is that appellant's payments to Tri-Gem's got ahead of the work actually performed and when Tri-Gem's abandoned the job, L & N had to pay someone else to do the work Tri-Gem's should have done in the first place. That may not be fair to L & N, but leaving an innocent subcontractor without any payment is too high a price for correcting the inequity placed upon the property owner. The Construction Lien Law does not suggest any such result and, indeed, in our view, suggests that when choosing between two innocent persons in these circumstances, it is the lien holder who prevails.
In Legge Industries v. Joseph Kushner Hebrew Academy, 333 N.J.Super. 537, 756 A.2d 608 (App.Div.2000), we addressed the question of a property owner's maximum liability under N.J.S.A. 2A:44A-10. We held that a property owner's maximum liability is not reduced by payments made to the contractor that were not earned and due before the subcontractor's lien was filed. Id. at 547, 756 A.2d 608. "We see no evidence that the Legislature or the Supreme Court intended to permit a property owner to defeat a supplier's [or subcontractor's] potential lien claim by either knowingly or negligently advancing payments to its prime contractor that were not yet due under its contract." Id. at 549, 756 A.2d 608. A necessary corollary of that holding is that a property owner who overpays a contractor runs the risk of never getting the work that was paid for from that contractor. However, under the Act the subcontractor does not bear the risk of that possibility.
For these reasons, summary judgment in favor of AEG Holdings, L.L.C., is affirmed. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995).
NOTES
[1] Liability may also be reduced by the property owner's prior payments to other lien claimants, but such reduction is not an issue in the present case.