In re ENRON CORP., et al., Debtor.

In re Garden State Paper Company, Debtor.

Schoonover Electric Co., Inc., Plaintiff,

v.

Enron Corp. and Garden State Paper Company, LLC, Defendants.

Bankruptcy Nos. 01–16034 (AJG), 01–16280(AJG).

Adversary No. 02–02140 (AJG).

United States Bankruptcy Court, S.D. New York.

June 23, 2003.

Weil, Gotshal & Manges LLP (Martin J. Bienenstock, Esq., Brian S. Rosen, Esq., Melanie Gray, Esq., Stephen T. Loden, Esq., Of Counsel), New York City, Connell Foley, LLP, (Peter J. Smith, Esq., Of Counsel), Roseland, NJ, for Enron Corp. and Garden.

Clancy Callahan & Smith, (Edward M. Callahan, Jr., Esq., Of Counsel), Roseland, NJ, Wasserman, Jurista & Stolz, P.C., (Leonard C. Walczyk, Esq., Of Counsel),

Millburn, NJ, for Schoonover Electric Co., Inc.

## MEMORANDUM DECISION GRANTING SUMMARY JUDGMENT IN FAVOR OF ENRON CORP. AND GARDEN STATE PAPER COMPANY, LLC

ARTHUR J. GONZALEZ, Bankruptcy Judge.

## I. *INTRODUCTION*

Schoonover Electric Co., Inc. ("Plaintiff" or "Schoonover") is a licensed electrical contractor in the State of New Jersey. Schoonover is a lien claimant of three (3) Construction Lien Claims filed pursuant to the New Jersey Construction Lien Claim Law (N.J. Stat. Ann. § 2A:44A–1, et seq. (West 2003)) (the "Construction Lien Law") against certain real property owned by Garden State Paper Company, LLC ("Garden State"). Garden State owned and operated an industrial plant and related facilities in the State of New Jersey, that were used in the manufacture and marketing of newsprint made from 100% recycled paper. Before the Court is a Motion for Summary Judgment (the "Motion for Summary Judgment"), dated October 24, 2002, brought by Plaintiff, requesting that the Court allow a certain secured claim in the amount of $448,986.53 against Garden State. Plaintiff had previously brought this adversary proceeding (the "Adversary Proceeding") by filing a Complaint to Seek Determination of Extent, Validity, Priority and Amount of Lien (the "Schoonover Complaint"), dated March 7, 2002, requesting that the Court: (i) acknowledge the extent, validity, priority and amount of certain of Plaintiff's liens in and to Garden State's real property, and the value of such secured claim; and (ii) order that the amount equivalent to Plaintiff's secured claim be set aside and paid over to Plaintiff upon the sale or other disposition of such property.

Garden State and Enron Corp. ("Enron" and, together with Garden State, "Debtors") responded with a motion, dated November 27, 2002, that the Court: (i) deny the Motion for Summary Judgment in its entirety; (ii) declare that Plaintiff's liens are unenforceable against Debtors' chapter 11 estates; and (iii) dismiss the Schoonover Complaint in its entirety. Oral arguments relating to the Motion for Summary Judgment were heard by this Court on January 9, 2003.

The following Memorandum Decision is the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as incorporated into this Adversary Proceeding under Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## II. *JURISDICTION*

This Adversary Proceeding relates to the Chapter 11 case, styled *In re Enron Corp., et al.*, Chapter 11 Case Nos. 01–16034(AJG). The Court has jurisdiction over this Adversary Proceeding pursuant to § 1334(b) of title 28 of the United States Code. This Adversary Proceeding is a core proceeding pursuant to § 157(b) of title 28 of the United States Code. Venue is proper in the district of New York pursuant to § 1408 of title 28 of the United States Code.

## III. *FACTUAL BACKGROUND*

The material facts relating to this Adversary Proceeding are generally uncontested.[1] Plaintiff and Garden State

---

1. Debtors have represented that, given the generally uncontested nature of the facts of this case, they did not file a Rule 7056–1 statement pursuant to Rule 7056–1 of the

entered into three contracts between themselves dated October 18, 2001, October 23, 2001 and November 27, 2001 (collectively, the "Electrical Contracts"), respectively, regarding electrical construction work to be performed at Garden State's New Jersey facilities. Debtors contend that the work to be performed pursuant to the Electrical Contracts was not completed prior to the Garden State Petition Date, whereas Plaintiff argues that all required work had been completed by December 5, 2001.[2] Plaintiff also entered into contracts with other parties relating to the improvement of Garden State's New Jersey facilities. In order to protect their right to receive payment for work performed, certain of these parties filed liens against Garden State's assets. The first such lien claim was filed by AMEC E & C Services, Ltd. on November 30, 2001 (the "AMEC Lien").

On December 2, 2001, Enron filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On December 17, 2001 (the "Garden State Petition Date"), Garden State filed a voluntary petition for relief under the Bankruptcy Code. On December 18, 2001, Plaintiff filed three construction liens (the "Schoonover Liens") against Garden State's assets, asserting a secured claim arising from the Electrical Contracts in the amount of $448,986.53. On December 19, 2001, an order was entered by this Court directing joint administration of the Enron case and the Garden State case. At all times following their respective bankruptcy filings, the Debtors were designated as debtors-in-possession and retained control of their assets and affairs.

Garden State subsequently sought the approval of this Court for the sale of its assets free and clear of all liens. This Court approved the sale transaction, which was then completed by Garden State. Valid liens on Garden State's assets attached to the proceeds of such sale transaction.

## IV. DISCUSSION

### A. Summary Judgment Standard

A Motion for Summary Judgment is before the Court. The basic principles governing a motion for summary judgment are well-settled. Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, governs summary judgment motions. Summary judgment may only be granted when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

---

Local Bankruptcy Rules for the Southern District of New York (Debtors' Response to Plaintiff's Motion for Summary Judgment at 2 n. 1).

**2.** Although Plaintiff and Debtors disagree on the completion date of the work performed under the Electrical Contracts, the Court has determined that such date is not material to this Adversary Proceeding.

242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under governing law." *Id.* at 248, 106 S.Ct. 2505. If no reasonable jury could find in favor of the non-movant because evidence to support its case is slight, there is no genuine issue of material fact and a grant of summary judgment is proper. *See Gallo v. Prudential Residential Servs. Ltd. P'ship.,* 22 F.3d 1219, 1224 (2d Cir.1994).

The material facts of this case are not disputed.[3] The issue at hand is a matter of law, mainly the interpretation of the Construction Lien Law in relation to §§ 545(2) and 546(b) of the Bankruptcy Code. Plaintiff contends that the Schoonover Liens perfect, by a post-petition filing, lien rights that accrued during Schoonover's pre-petition performance pursuant to the Electrical Contracts or, in other words, since § 10 of the Construction Lien Law provides that a lien claim attaches on filing, that the post-petition filing relates back to the alleged acquisition of Plaintiff's lien rights at the commencement of Plaintiff's service period. Alternatively, Plaintiff argues that the Schoonover Liens relate back to the date that a Garden State "lien fund" was established through the filing of the AMEC Lien. Under both theories, Plaintiff reasons that the relating back of the Schoonover Liens to the pre-petition period pursuant to New Jersey law would qualify such liens for an exception, found in § 546(b) of the Bankruptcy Code (the "546(b) Exception"), to the trustee's avoidance powers pursuant to § 545(2) of the Bankruptcy Code. Debtors argue that, according to New Jersey law, the Schoonover Liens attach as of the date of their filing, and thus do not relate back to the pre-petition period or qualify for the § 546(b) Exception. The Court ultimately

must determine whether the Construction Lien Law would permit Plaintiff to perfect the Schooner Liens when another entity has acquired an interest in the property subject to such liens prior to their date of filing, thereby bringing the liens within the scope of the § 546(b) Exception.

*B. Avoidance of the Schoonover Liens Under § 545 of the Bankruptcy Code*

■ Section 545 of the Bankruptcy Code provides that:

> The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—
>
> . . .
>
> (2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists . . .

11 U.S.C. § 545 (2003).

■ In other words, the trustee may avoid the fixing of a statutory lien on the Debtors' property if such lien was not perfected or enforceable against a hypothetical bona fide purchaser that purchases such property on the Garden State Petition Date. *See 5 Collier on Bankruptcy* § 545.03 (15th ed.2003) ("Section 545(2) requires that for a statutory lien to be valid against the trustee it must be perfected or enforceable against one acquiring the rights of a bona fide purchaser of property subject to the lien, whether or not such a purchaser actually exists, at the time of the commencement of the case."). Since the Schoonover Liens were not filed and perfected until after the Garden State Petition Date, Debtors argue that they are

---

**3.** *See supra* n. 2.

unenforceable against the Debtors' chapter 11 estates under § 545(2). However, Plaintiff responds that the Schoonover Liens fall within the § 546(b) Exception, which would allow the liens despite their having been filed subsequent to the Garden State Petition Date.

*C. Exception Pursuant to § 546(b)(1)*

Section 546(b)(1) preserves a creditor's perfection rights under any applicable law, notwithstanding the commencement of a bankruptcy case, by limiting the trustee's avoidance powers under §§ 544, 545 and 549 of the Bankruptcy Code as they relate to the avoidance of certain post-petition transfers. Specifically, § 546(b)(1) permits, under limited circumstances, the post-petition perfection of interests in property. *See In re Vienna Park Properties*, 976 F.2d 106, 114 (2d Cir.1992). Section 546(b)(1) states that:

The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that—

(A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection . . .

11 U.S.C. § 546(b)(1) (2003).

Pursuant to § 544(a) of the Bankruptcy Code, the trustee became an intervening lien creditor upon the commencement of the bankruptcy case on the Garden State Petition Date. 11 U.S.C. § 544(a) (2003). Therefore, for the Schoonover Liens to be valid, the Construction Lien Law must allow for the perfection of the Schoonover Liens against the trustee despite the fact that Plaintiff filed such liens post-petition. *In re Lionel Corp.*, 29 F.3d 88, 93 (2d

Cir.1994) ("As long as an 'applicable law' authorizes perfection after another party has acquired interests in the property, a lienor fits within the exception.").

■ "The relatively narrow purpose of this exception [§ 546(b)(1)] is 'to protect, in spite of the surprise intervention of [the] bankruptcy petition, those whom State law protects' by allowing them to perfect an interest they obtained before the bankruptcy proceedings began." *In re Parr Meadows Racing Ass'n, Inc.*, 880 F.2d 1540, 1546 (2d Cir.1989) (*quoting* H.R.Rep. No. 95–595, at 371 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6327). Thus, the filing of a bankruptcy petition will not prevent the holder of an interest in property from perfecting its interest if, absent the bankruptcy filing, the interest holder could have, under "any generally applicable law," perfected its interest against an entity acquiring rights in the property before the date of perfection. *See generally 5 Collier on Bankruptcy* § 545.03[3].

■ The Supreme Court has determined that property interests are created and defined by state law. *See Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Therefore, in the event that New Jersey law allows the post-petition perfection of the Schoonover Liens to be effective against the Debtors' chapter 11 estates, such liens would fall within the § 546(b) Exception and would be allowed.[4] Plaintiff argues that, pursuant to the Construction Lien Law, the perfection of the Schoonover Liens relates back in time to the pre-petition period, such that the liens are effective against the Debtors' chapter 11 estates as acquirers of rights in Debtors' property prior to the

4. The Court acknowledges that both parties cited to the New Jersey Construction Lien Law with regards to issues of property rights.

date of perfection of such liens. First, Plaintiff asserts that the Schoonover Liens perfect, by a post-petition filing, lien rights that accrued during Schoonover's pre-petition performance pursuant to the Electrical Contracts or, in other words, since § 10 of the Construction Lien Law provides that a lien claim attaches on filing, that the post-petition filing relates back to the alleged acquisition of Plaintiff's lien rights at the commencement of Plaintiff's service period. Alternatively, Plaintiff reasons that its liens should be allowed because the filing date relates back to the filing date of the AMEC Lien. Although there are only a limited number of cases interpreting the Construction Lien Law, the text of the statute and existing case law provide sufficient guidance with respect to these issues. For the reasons stated below, the Court disagrees with Plaintiff's conclusions.

### D. Filing of the Schoonover Liens Does Not Relate Back to the Date of Commencement of Work

■ Plaintiff argues that the filing of the Schoonover Liens relates back to the date on which Schoonover first provided work, services and materials to the Debtor, since Plaintiff's interest in property accrued at that time. New Jersey courts have expressed that the Construction Lien Law "must be read sensibly and consistent with the law's overall intent to permit contractors to file liens and thus protect the value of the work they have provided." *The Thomas Group, Inc. v. Wharton Senior Citizen Housing, Inc.*, 163 N.J. 507, 517, 750 A.2d 743 (N.J.2000); *AEG Holdings, L.L.C. v. Tri–Gem's Builders, Inc.*, 347 N.J.Super. 511, 514, 790 A.2d 954 (N.J.Super.Ct.2002). *See also Triple "R" Enters., Inc. v. Santo Pezotti*, 344 N.J.Super. 31, 36, 779 A.2d 1110 (N.J.Super.Ct.2001). New Jersey Courts have also determined that "lien statutes are remedial and are designed to guarantee ef-

fective security to those who furnish labor or materials used to enhance the value of the property of others, and, where the terms of the statute reasonably permit, the law should be construed to effect this remedial purpose." *Thomas*, 163 N.J. at 517, 750 A.2d 743. *Accord AEG Holdings*, 347 N.J.Super. at 514, 790 A.2d 954; *Triple "R" Enters.*, 344 N.J.Super. at 36, 779 A.2d 1110; *J.R. Christ Constr. Co., Inc. v. Willete Assocs.*, 47 N.J. 473, 477, 221 A.2d 538 (N.J.Sup.Ct.1966). Therefore, in reviewing the Construction Lien Law, this Court is mindful of the statute's purpose of protecting contractors' ability to receive consideration for services rendered, while also taking into account the competing purpose of ensuring that bona fide purchasers and subsequent lien claimants receive adequate notice of pre-existing claims. *See Triple "R" Enters.*, 344 N.J.Super. at 36, 779 A.2d 1110.

■ In interpreting a statute, we look to the language of the statute to discern its intent. *See Triple "R" Enters.*, 344 N.J.Super. at 36, 779 A.2d 1110. "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (*quoting Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)). Even when giving weight to the remedial purpose of the Construction Lien Law, this Court finds that the statute makes clear that a lien claim attaches to the interest of an owner from and after the filing of a lien claim, as opposed to upon commencement of a claimant's service period as proposed by Plaintiff. Thus, Plaintiff's position is contrary to the explicit wording of the statute and cannot be supported.

Section 3 of the Construction Lien Law states:

> Any contractor, subcontractor or supplier who provides work, services, material or equipment pursuant to a contract, shall be entitled to a lien for the value of the work or services performed, or materials or equipment furnished in accordance with the contract and based upon the contract price, subject to the provisions of sections 9 and 10 of this act.

N.J. Stat. Ann. § 2A:44A–3 (West 2003).

Section 3 indicates that a contractor who provides services shall be entitled to a lien for the value of the work performed. However, the Construction Lien Law makes clear the fact that being entitled to a lien does not equate to the acquisition of an interest in property effective against an entity that acquires rights in such property before the date of perfection, as required by the § 546(b) Exception. Although § 3 entitles a contractor to obtain a lien for work provided, pursuant to § 10, as discussed below, such contractor does not obtain the requisite interest in property until he or she has actually filed such lien, nor does such lien attach to an interest first recorded by a bona fide purchaser or an intervening lien creditor.

The entitlement of a contractor to a lien for services rendered by § 3 of the Construction Lien Law is subject to the provisions of §§ 9 and 10. Section 9 addresses the maximum amount of a lien claim and is not relevant to the present analysis. On the other hand, § 10 deals with the attachment of a lien claim to the interest of an owner of property and has direct bearing on this discussion. It states:

> [T]he lien claim shall attach to the interest of the owner *from and after the time of filing* of the lien claim. Except as provided by section 20 of this act, *no lien claim shall attach to the estate or interest acquired by a bona fide pur-*

*chaser first recorded or lodged for record;* nor shall a lien claim enjoy priority over any mortgage, judgment or other lien first recorded, lodged for record, filed or docketed.

N.J. Stat. Ann. § 2A:44A–10 (West 2003) (emphasis added).

Rather than suggesting that a lien filing dates back to the commencement of a claimant's service period or that a lien claim is established at such time, § 10 makes clear that a lien claim attaches only at the time of filing, regardless of the fact that a contractor may be entitled to a lien pursuant to § 3. Section 10 then goes on to state that except as provided by § 20 of the Construction Lien Law, no lien claim shall attach to the interest acquired by a bona fide purchaser first recorded, nor shall a lien claim enjoy priority over any other first recorded lien. These terms of § 10 are antithetical to the § 546(b) Exception, which requires the allowance of the perfection of an interest in property to be effective against an entity that acquires rights in such property prior to the date of perfection. Since the Schoonover Liens were not filed until after the Garden State Petition Date, they would not attach until such time. However, given that § 10 is explicit in stating that a lien will not attach to the interest acquired by a bona fide purchaser first recorded or lodged for record, or to any mortgage, judgment or other lien first recorded or lodged for record, and given that the bankruptcy trustee is treated as an intervening lien creditor pursuant to § 544(a) of the Bankruptcy Code, the Schoonover Liens do not qualify for the § 546(b) Exception, thereby allowing such liens to be avoided under § 545(2) of the Bankruptcy Code.

The sole exception provided for in § 10 to the rule that no lien claim shall attach to the interest acquired by a bona fide purchaser first recorded, or to that of a first

recorded lien, is found within § 20 of the Construction Lien Law. Section 20 provides that:

All valid liens filed pursuant to this act shall attach to the interest of the owner from the time of filing of the lien claim in the office of the country clerk, subject to the provisions of section 10 of this act.

a. In the event of the creation, conveyance, lease or mortgage of an estate or interest in real property to which improvements have been made that are subject to the lien provisions of this act, a lien claim validly filed under this act shall have priority over any prior creation, conveyance, lease or mortgage of an estate or interest in real property, *only* if the claimant has filed with the county clerk prior to that creation, conveyance, lease or mortgage, a Notice of Unpaid Balance and Right to File Lien ...

f. Failure to file a Notice of Unpaid Balance and Right to File Lien shall not affect the claimant's lien rights arising under the provisions of this act, to the extent that no creation, conveyance, lease or mortgage of an interest in real property has taken place prior to the filing of a Notice of Unpaid Balance and Right to File Lien or lien claim.

N.J. Stat. Ann. § 2A:44A–20 (West 2003) (emphasis added).

The first paragraph of § 20 reiterates the point addressed above that lien claims attach from the time of filing, and not from the commencement of the claimant's service period. Section 20(a) specifies that, in the event that a Notice of Unpaid Balance and Right to File Lien ("NUB") is filed, a subsequently filed lien claim will relate back to the filing of the NUB such that the lien claimant obtains priority over intervening bona fide purchasers. On the other hand, since the statute stipulates that this is the only method of gaining priority over

an intervening lien creditor, if an NUB is not filed there is no relation back and the lien will not be effective against bona fide purchasers who acquire an interest in property prior to the filing of a lien claim.

Section 20(f) once again supports the proposition that, absent the filing of an NUB, a lien claim will not relate back and will be effective only from the date of filing. In stating that the failure to file an NUB shall not affect a claimant's lien rights to the extent that no creation, conveyance, lease or mortgage of an interest in real property has taken place prior to the filing of an NUB or lien claim, § 20(f) inversely implies that the failure to file an NUB will affect a claimant's lien right in the event that such a creation, conveyance, lease or mortgage of an interest in real property occurs prior to the filing of an NUB or lien claim. If, as proposed by Plaintiff, the Construction Lien Law anticipates the relation back of a lien to the date of the commencement of a claimant's service period, then the threat of an intervening claim, and thus the need for the filing of an NUB, would not be an issue. The mechanism for the filing of an NUB is required precisely because liens do not relate back to the commencement of the service period, but rather attach at the time of filing.

Debtors claim, and Plaintiff concedes, that Schoonover did not at any time file an NUB relating to the Schoonover Liens. (Plaintiff's Reply Brief to Debtors' Response to Plaintiff's Motion for Summary Judgment at 8). Plaintiff responds that Schoonover was ineligible to file NUBs relating to work performed under the Electrical Contracts because, pursuant to § 20(a), a potential lien claimant only has the right to file NUBs relating to actual amounts due and owing on the date of the filing of such NUBs. Plaintiff argues that Garden State's invoices for services rendered pursuant to the Electrical Contracts

were not due and owing to Schoonover until after the Garden State Petition Date, thereby preventing Schoonover from filing NUBs prior to such date. However, whether or not Plaintiff was eligible to file NUBs is not relevant to this Memorandum Decision. What is relevant is that the statute explicitly states that the filing of an NUB is the only method by which a lien may gain priority over a prior creation, conveyance, lease or mortgage of an estate or interest in real property. This term defeats Plaintiff's argument that the Schoonover Liens should date back to the commencement of Schoonover's service period, since it effectively limits the means by which a lien can relate back to a point in time prior to its filing. Furthermore, even if Plaintiff was ineligible to file NUBs on the Schoonover Liens, Plaintiff could have filed actual lien claims once it had completed the majority of the physical work contracted for under the Electrical Contracts.[5] *See Thomas,* 163 N.J. at 519, 750 A.2d 743 ("Performing that work [the majority of the physical work on the property] entitled it [contractor] to the protection afforded by the construction lien provision of N.J.S.A. 2A:44A–3."). Had Plaintiff done so, the Construction Lien Law would have allowed such liens to attach to Garden State's property prior to the Garden State Petition Date. Having failed to file its liens prior to the Garden State Petition Date, the statute does not then provide for the relation back of the liens to the commencement of Schoonover's work.

E. *Filing of the Schoonover Liens Does Not Relate Back to the Date of Filing of the AMEC Lien*

As an alternate theory to the Schoonover Liens relating back to the date of the commencement of Schoonover's work for Garden State, Plaintiff argues that the Schoonover Liens should relate back to November 30, 2001, the date of the filing of the AMEC Lien. Plaintiff claims that on such date, what is commonly known as a "lien fund" was established pursuant to § 10 of the Construction Lien Law. Plaintiff goes on to reason that the date of the creation of the lien fund, i.e. the date of the filing of the first lien, is the seminal event which creates the property interest to which all subsequently filed construction liens attach. Therefore, Plaintiff argues, later filed liens should relate back to that date. This Court finds that the Construction Lien Law and the related case law do not support this proposition.

Section 10 of the Construction Lien Law provides that:

[T]he maximum amount for which an owner will be liable or an interest in real property subject to a lien under this act for one or more lien claims filed pursuant to this act shall not be greater than:

a. In the case of a lien claim filed by a contractor, the total amount of the contract price of the contract between the owner and the contractor less the amount of payments made, if any, prior to receipt of a copy of the lien claim pursuant to section 7 of this act, by the owner to the contractor or any other claimant who has filed a lien claim or a Notice of Unpaid Balance and Right to File Lien pursuant either to a contract with the contractor and any subcontractor or supplier, or a contract between a subcontractor of the contractor and any supplier or other subcontractor; or

---

**5.** Plaintiff alleges that it had performed work and provided materials under the Electrical Contracts from October 1, 2001 through December 5, 2001. (Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment at 1).

b. In the case of a lien claim filed by a subcontractor or supplier, the amount provided in subsection a. of this section, or the contract price of the contract between the contractor or subcontractor and the subcontractor or supplier, as applicable, pursuant to which the work, services, materials or equipment is provided by the subcontractor or supplier, less the amount of payments made, if any, prior to receipt of a copy of the lien clam pursuant to section 7 of this act, to the contractor or supplier or any other claimant who has filed a lien claim or a Notice of Unpaid Balance and Right to File Lien pursuant to a contract with such subcontractor or supplier, whichever is less.

N.J. Stat. Ann. § 2A:44A–10.

In discussing the working mechanics of the lien fund, *Legge Indus. v. Joseph Kushner Hebrew Academy*, 333 N.J.Super., 537, 554–5, 756 A.2d 608 (N.J.Super.Ct.2000) explains:

> Section 10 limits the owner's maximum liability to lien claimants by defining and formulating the so-called lien fund. That formula begins with the prime contract price, reduced by payments made on the contract before receipt of the filed lien claim. As stated in Thomas Group [*Thomas*, 163 N.J. at 521, 750 A.2d 743], the owner is protected by limiting its exposure to the unpaid portion of the contract price.

Thus, the lien fund effectively limits an owner's maximum liability to contractors, subcontractors and suppliers by creating a pool from which payments for work or services relating to a contract shall be distributed. In discussing the purpose of establishing a lien fund, New Jersey courts have stated that:

> [U]nderlying the lien fund concept is the principle that an owner, contractor, or subcontractor should not be compelled to pay twice for the same work or services when a valid lien claim is filed. The statute provides that an owner's property is never subject to liens in an amount greater than the amount unpaid by the owner to its prime contractor at the time the lien claim is filed by one claiming a lien through that prime contractor.

*Thomas*, 163 N.J. at 521, 750 A.2d 743; *Legge*, 333 N.J.Super. at 548, 756 A.2d 608.

This Court notes that this explanation of the rationale for a lien fund has nothing to do with the relation back of lien claims to the filing date of the initial lien that establishes a lien fund, such that subsequently filed liens may gain priority over intervening claimants, but rather focuses on the need to protect owners from the risk of paying twice for the same work or services. Whereas, as noted in Section IV(D) above, the Construction Lien Law emphasizes that liens attach from their filing date forward, neither the statute nor the related case law support the proposition that liens that are eligible to participate in a lien fund relate back to the initial lien filed in connection with such fund so as to gain priority over intervening claims.

The language of § 10 of the Construction Lien Law indicates that a lien fund shall apply specifically to lien claims that are validly filed, independent of the creation of a lien fund. Sections 10(a) and (b) begin respectively, "In the case of a lien claim filed by a contractor ...," and "In the case of a lien claim filed by a subcontractor or supplier ..." This language suggests that a validly filed lien is a prerequisite for participation in a lien fund. Sections 10(a) and (b) each go on to state that amounts to be deducted from a contract's price include "payments made, if any, prior to receipt of a copy of the lien claim pursuant to section 7 of this act ..." The use of the definite article "the" in

describing a lien claim demonstrates a legislative understanding that a specific, preexisting valid lien claim is necessary to participate in a lien fund. However, there is no indication in the statute that the establishment of a lien fund validates otherwise avoidable liens by enabling them to relate back to the lien fund's inception date.

The need for a preexisting, valid lien claim to participate in a lien fund is further supported by the New Jersey courts' assertion that "[U]nderlying the lien fund concept is the principle that an owner, contractor, or subcontractor should not be compelled to pay twice for the same work or services *when a valid lien claim is filed.*" *Thomas,* 163 N.J. at 521, 750 A.2d 743; *Legge,* 333 N.J.Super. at 548, 756 A.2d 608; *Triple R. Enters.,* 344 N.J.Super. at 38, 779 A.2d 1110 (emphasis added). This statement makes clear that New Jersey courts do not perceive lien funds as validating otherwise invalid liens, but rather as a mechanism for addressing the payment of liens that are already validly filed. Therefore, this Court finds that the filing of the Schoonover Liens does not relate back to November 30, 2001, the date of the filing of the AMEC Lien.

The Court has determined that Plaintiff's interest in Garden State's property arose from the date of filing of the Schoonover Liens, and thus was not able to be perfected against an intervening entity acquiring rights in such property as required by the § 546(b) Exception. This results in the avoidance, pursuant to § 545(2) of the Bankruptcy Code, of the post-petition Schoonover Liens, rendering them invalidly filed. Therefore, the concept of the lien fund provided for in § 10 of the Construction Lien Law does not apply to the Schoonover Liens, and the Schoonover Liens shall not be entitled to participate in any lien fund created pursuant to § 10.

### F. Case Law Cited by Plaintiff is Distinguishable from the Present Case

In support of its position, Plaintiff cites *In re Lionel Corp.,* 29 F.3d at 93, where the Second Circuit enforced a post-petition lien in finding that the New York Lien Law allowed such lien to be superior to the subsequently created interest of a hypothetical bankruptcy trustee. However, the present case is distinguishable from *In re Lionel Corp.* in that the Second Circuit found that, with regards to *In re Lionel Corp.,* the New York Lien Law authorized the perfection of a lien after another party had acquired interests in the property, whereas this Court has found that the Construction Lien Law does not grant such authorization. *Id.* at 93. Furthermore, the Second Circuit gave weight to the fact that the plaintiff in *In re Lionel Corp.* had filed its lien prior to the petition date, but had failed to serve notice on the property's owners or to file an affidavit of proof of service until after the petition date. *Id.* at 93. In the case at hand, Plaintiff did not make any filings until after the Garden State Petition Date.

Plaintiff also attempts to bolster its claim by citing *In re Yobe Elec., Inc.,* 728 F.2d, 207, 208 (3d Cir.1984), in which the Third Circuit found that a post-petition lien filed in Pennsylvania "related back" to the installation of the first material pursuant to an electrical contract. However, Plaintiff also acknowledges that *In re Yobe Elec., Inc.* is distinguishable from the present case because Pennsylvania's mechanics lien statute includes an explicit relation back provision, whereas the Construction Lien Law does not. (Tr. 1/9/03 p. 66:6–9).

Finally, Plaintiff discusses *In re Butler Constr. Co.,* 110 B.R. 281, 283 (Bankr.Ct. W.D.Ky.1989), in which the Bankruptcy Court for the Western District of Kentucky held that a lien perfected post-peti-

244

tion fell within the § 546(b) Exception. Once again, this case is distinguishable from the case at hand since the court in *In re Butler Constr. Co.*, 110 B.R. at 283, held that Kentucky law permitted a post-petition mechanics' lien to be effective against a bankruptcy trustee, whereas, for the reasons stated herein, this Court has found that the Construction Lien Law does not. Since all three of the cases referenced by Plaintiff are distinguishable from the present case, the Court maintains its finding that the Construction Lien Law does not fall within the § 546(b) Exception.

## V. *CONCLUSION*

The Court finds that summary judgment is appropriate in this case, since there is no genuine issue as to material fact and a decision may be rendered as a matter of law. Fed.R.Civ.P. 56(c). For the reasons set forth above, this Court holds that the Construction Lien Law does not permit perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection, and therefore the Schoonover Liens do not fall within the scope of the § 546(b) Exception. Thus, the Schoonover Liens were not perfected or enforceable against a hypothetical bona fide purchaser prior to the filing of the Garden State Petition, and may be avoided pursuant to § 545(2). Since the Schoonover Liens may be avoided under § 545(2), the rules relating to lien funds, set forth in § 10 of the Construction Lien Law, do not apply to the Schoonover Liens.

This Court holds that: (i) Plaintiff's Motion for Summary Judgment is denied in its entirety; (ii) the Schoonover Liens are and shall be unenforceable against Debtors' chapter 11 estates; and (iii) the Schoonover Complaint is dismissed in its entirety.

Debtors are hereby directed to submit to the Court an order on five (5) days' notice consistent with this Memorandum Decision.