750 A.2d 743

THE THOMAS GROUP, INC., PLAINTIFF–APPELLANT, v. WHARTON SENIOR CITIZEN HOUSING, INC., DEFENDANT–RESPONDENT, AND AFFORDABLE HOUSING DEVELOPERS, INC., INTERVENOR–RESPONDENT.

Argued February 28, 2000—Decided May 4, 2000.

*Patrick J. Greene, Jr.*, argued the cause for appellant (*Peckar & Abramson*, attorneys).

*Sheppard A. Guryan* argued the cause for respondents (*Lasser Hochman*, attorneys; *Bruce H. Snyder*, on the briefs).

*Edward M. Callahan, Jr.*, submitted a brief on behalf of amicus curiae Northern New Jersey Chapter, Inc., National Electrical Contractors Association (*Clancy, Callahan & Smith*, attorneys; *Mr. Callahan* and *Phillip R. Boyce*, on the brief).

*Edward J. Frisch* submitted a brief on behalf of amicus curiae Mechanical Contractors Association of New Jersey, Inc. (*Lindabury, McCormick & Estabrook*, attorneys; *Mr. Frisch* and *Greg K. Vitali*, on the brief).

The opinion of the Court was delivered by

LaVECCHIA, J.

For the first time since its enactment in 1994, the provisions of the Construction Lien Law, *N.J.S.A.*, 2A:44A–1 to –38, are before us for consideration. The Construction Lien Law replaced the longstanding Mechanic's Lien Law in New Jersey, making it easier for contractors, subcontractors and suppliers to place construction liens on property in the amount of the work, services or material they have provided, and for which they have not been paid. The new statute protects a contractor's right to file a lien claim for the value of work it has performed.

This appeal presents the specific issue of whether a contractor is entitled to file a lien claim for unpaid contractual amounts if the contractor has not fully performed contractual conditions precedent to payment. In discharging, as prematurely filed, the lien claim filed by plaintiff, the Thomas Group, Inc. ("Thomas Group"), the trial court held that *N.J.S.A.* 2A:44A–3 did not entitle the Thomas Group to a construction lien on the property of the owner, Wharton Senior Citizen Housing, Inc. ("Wharton"), because it had not performed the work fully "in accordance with the contract." That ruling was affirmed by the Appellate Division. Both the trial court and the Appellate Division found that because Thomas Group had failed to turn over important documents—namely Affidavits of Indebtedness, a Consent of Surety, a Certificate of Insurance, and a Release of Liens from Subcontractors, as required by the retainage provisions of the contract—and had not

completed certain Punch List items, Thomas Group had not performed the work entitling it to the retainage under the contract. Therefore, Thomas Group was held not to be entitled to establish a lien on the property in an amount approximately equal to the retainage or ten percent of the total contract price.

We hold that by dismissing Thomas Group's lien claim as "prematurely filed" the courts below improperly denied Thomas Group the right to a lien establishing its security interest in the property in the amount of the value of the actual work it had performed on the project.

I.

Thomas Group entered into a contract with Affordable Housing Developers, Inc. ("AHD"), a Designer/Builder, on July 28, 1995, to serve as the general contractor on a construction project for Wharton. On September 3, 1997, Thomas Group sent AHD an application for final payment in the amount of $754,949.00 for work provided under the $5,110,492.10 contract. On the same day, Thomas Group filed a construction lien claim for $658,290.10, pursuant to the Construction Lien Law, on the property owned by Wharton.

In October 1997, Thomas Group filed a complaint in Superior Court to foreclose on its construction lien claim, naming the owner, Wharton, as defendant. AHD moved to intervene in the action brought against Wharton because it was contractually obligated to indemnify Wharton in connection with lien claims brought against it. AHD simultaneously moved for summary judgment. The trial court granted both AHD's motion to intervene and its motion for summary judgment. As a result, Thomas Group's *lis pendens* and construction lien claim were discharged and Thomas Group was barred from filing any subsequent lien claim to the extent of the face amount claimed in the discharged lien claim.

The trial court held that Thomas Group's lien claim was filed prematurely because Thomas Group had not performed the work

represented by the value of the lien "in accordance with the contract" as required by *N.J.S.A.* 2A:44A–3. Specifically, the court found that a substantial amount of the lien claim filed by Thomas Group represented retainage amounts withheld by AHD throughout the progress of the work pursuant to the parties' written agreement. The court noted that the contract between AHD and Thomas Group required that AHD withhold ten percent of the total contract price as retainage until final completion of the project.

The court observed that Thomas Group's entitlement to the retainage was governed by the terms of the contract between Thomas Group and AHD, but that Thomas Group had not complied with all the requirements of the contract that constituted prerequisites to release of the retainage. Specifically, paragraph 13.2 stated, in pertinent part: "Retainage shall be paid to the contractor at a time fixed for final payment as described in paragraph 5.4 of the contract." The time for final payment of amounts retained was described in paragraph 5.4.1, which stated:

Neither final payment nor amounts retained, if any, shall become due until [Thomas Group] submits to [AHD] (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which [AHD's] or [Wharton's] property might be liable have been paid or otherwise satisfied, (2) consent of surety, if any, to final payment, (3) a certificate that insurance required by the Contract Documents is in force following completion of the Work, and (4) if required by [AHD], other data establishing payment or satisfaction of obligations, such as receipts, releases and waivers of liens arising out of Part 2, to the extent and in such form as may be designated by [AHD].

Paragraph 5.4.2 provided:

Final payment constituting the entire unpaid balance due shall be paid by [AHD] to [Thomas Group] upon [AHD's] receipt of [Thomas Group's] final application for payment when the work has been completed and the Contract fully performed.

As noted, in September 1997, Thomas Group sent AHD an application for final payment in accordance with paragraph 5.4.2 of the contract. But by its own admission, Thomas Group had not submitted an Affidavit of Indebtedness, Consent of Surety, Certificate of Insurance or Release of Liens from Subcontractors. Additionally, the Certificate of Substantial Completion submitted by Thomas Group on August 11, 1997, contained a 55–page Punch

List describing numerous corrections and repairs to be made to the project. Moreover, as of September 3, 1997, the date Thomas Group filed the lien claim, there were construction liens on the property filed by subcontractors and sub-subcontractors totaling approximately $449,409.35.

The trial court found that "although it [sic] undisputed that [Thomas Group] has performed the majority of work necessary to recover the amount stated in the lien claim," and it had not "willfully overstated" the amount of the lien claim, Thomas Group had not provided work or services, nor furnished material or equipment "in accordance with the contract" as required by Section 3 of the Lien Law. The court noted that the Lien Law

did not contemplate a lien claim being used as a tool by a contractor or subcontractor to circumvent its contractual obligations. . . . The purpose of the retainage clause would be completely undermined, and the basis of the bargain between [Thomas Group], AHD and Wharton, would be severely disrupted, if Thomas Group was able to enforce its lien claim against the retainage without meeting the express conditions of the contract. Therefore, the lien claim is without basis.

Thus, the court concluded that because the lien claim was prematurely filed, and filed in an improper manner, Thomas Group should be penalized pursuant to Section 15 of the Lien Law for filing the lien claim. Section 15 provides that if a lien claim is without basis, the amount of the claim is willfully overstated, or the claim is not filed in substantially the form or in the manner or at a time required by the provisions of the Lien Law, the claimant forfeits all claimed lien rights and all rights to file subsequent lien claims to the extent of the face amount in the lien claim. *N.J.S.A.* 2A:44A-15(a).

The Appellate Division affirmed, noting that "the ability to file a construction lien is directly related to the terms of the contract." Measured by that standard, the Appellate Division found that Thomas Group's lien claim was premature.

## II.

The Construction Lien Law became effective in April 1994,

replacing the Mechanic's Lien Law.[1]  The statute provides that any contractor or subcontractor or supplier who provides work, services, material or equipment pursuant to a contract shall be entitled to a lien for the value of the work or services performed, or materials or equipment furnished in accordance with the contract and based on the contract price.  *N.J.S.A.* 2A:44A–3.  The lien attaches to the interest of the owner in the real property. *N.J.S.A.* 2A:44A–3.

The Construction Lien Law requires a claimant to file a lien claim within 90 days from the last date of work, services, material or equipment provided for which payment is claimed.  *N.J.S.A.* 2A:44A–6.  A lien claimant forfeits all right to enforce a lien if the claimant fails to bring an action in the Superior Court in the county where the property is located to establish the lien claim within one year of the date of the last provision of work, services, material, or payment for which the lien claim was filed, or within 30 days following receipt of written notice from the owner requiring the claimant to establish the lien claim.  *N.J.S.A.* 2A:44A–14(a)(1), (2).  The claimant also forfeits its right to bring a lien claim if the claim is without basis, is willfully overstated, or is not filed in the form or manner required by the provisions of the statute.  *N.J.S.A.* 2A:44A–15(a).

Once the Construction Lien claim is filed and served, the owner of the property has the following options: (1) the owner can pay the lien claimant, or the party owing the lien claimant can pay the claimant, and the claimant must discharge the lien claim within 30 days of payment (*N.J.S.A.* 2A:44A–12, –30); (2) the owner can post a bond equal to 110% of the lien claim as substitute security for the liened property (*N.J.S.A.* 2A:44A–31); (3) the owner can serve a demand on the lien claimant to start a lawsuit within 30 days (*N.J.S.A.* 2A:44A–14(a)(2)); (4) the owner can do nothing and

---

[1] The Construction Lien Law, *N.J.S.A.* 2A:44A–1 to –38, amended *N.J.S.A.* 2A:15–6 and repealed *N.J.S.A.* 2A:44–64 to –104, and *N.J.S.A.* 2A:44–106 to –124.1.

the lien claimant must initiate a lawsuit within one year from the date the last work was provided (*N.J.S.A.* 2A:44A–14(a)(1)).

There are several significant differences between the Construction Lien Law and the Mechanic's Lien Law that it replaced. Under the Mechanic's Lien Law, a supplier of labor and/or materials was obliged to file a mechanic's notice of intention prior to the performance of labor or the furnishing of materials, as a condition precedent to filing a lien claim. *N.J.S.A.* 2A:44–71 (repealed April 22, 1994); *see generally, Mansion Supply Co. v. Bapat,* 305 *N.J.Super.* 313, 316, 702 *A.*2d 509 (App.Div.1997), *certif. denied,* 153 *N.J.* 49, 707 *A.*2d 153 (1998) (discussing pre-filing requirement under Mechanic's Lien Law). After the filing of the notice of intention, the unpaid supplier of labor or materials had to bring an action to foreclose the lien within four months of the date the last labor or materials were provided. *N.J.S.A.* 2A:44–98 (repealed April 22, 1994). Failure to file the notice of intention precluded the party from later filing a lien claim. That pre-filing process often created distrust and friction between contractors and owners. *Mansion Supply Co., supra,* 305 *N.J.Super.* at 317, 702 *A.*2d 509.

In an effort to simplify the lien-filing process, the Construction Lien Law eliminated the pre-filing requirement and instead provided that a party must file a claim within 90 days of the last work, services or material provided. *N.J.S.A* 2A:44A–6. That revision eliminated a tension created under the prior law. In addition, as a benefit to contractors, the Construction Lien Law codified a prohibition on waivers. Waivers had been permitted under the Mechanic's Lien Law, and contractors often were pressured to waive their lien rights in exchange for signing construction contracts. Under the new Construction Lien Law, waivers on construction lien rights are deemed void and against public policy "unless given in consideration for payment for the work, services, materials, or equipment provided, and ... [are] effective only upon and to the extent that such payment is actually received." *N.J.S.A.* 2A:44A–38.

No provisions in the statute address the interaction between the statute and contractual retainage clauses. Nor are there any published opinions that involve the interplay between retainage clauses in construction contracts and the Construction Lien Law. In fact, there are currently only a handful of New Jersey cases interpreting the Construction Lien Law. *Groesbeck v. Linden,* 321 *N.J.Super.* 349, 354, 729 *A.*2d 47 (App.Div.1999)(holding that contractor did not lose contract remedy by his initial effort to file· lien); *Orefice v. ADR,* 315 *N.J.Super.* 493, 497, 719 *A.*2d 169 (App.Div.1998)(holding that builder had right to file demand for arbitration in addition to lien claim under Construction Lien law); *Mansion Supply Co., supra,* 305 *N.J.Super.* at 317, 702 *A.*2d 509 (filing Notice of Unpaid Balance and Right to File Lien by contractor on residential construction project did not extend time for contractor to file lien); *Gallo v. Sphere Construction Corp.,* 293 *N.J.Super.* 558, 562, 681 *A.*2d 1237 (Ch.Div.1996)(noting that written contract between parties is prerequisite to filing construction lien claim). The statute's legislative history does not speak to the concept of retainage in construction contracts and its interaction with the Lien Law. Thus, in deciding this case, we focus primarily on the statutory provisions and our understanding of the policies underlying the Lien Law.

Thomas Group argues that the trial court and the Appellate Division misinterpreted the statutory phrase "in accordance with the contract", construing it to mean that all covenants related to final payment had to be performed before a construction lien claim could be filed. It contends that the Lien Law authorizes a lien for the value of work performed, and does not condition that lien on contractual payment terms. Thomas Group argues that although it completed the majority of·the physical work on the project, it simply did not turn over the final papers or complete the Punch List items.

Wharton and AHD contend that Thomas Group's interpretation of the Lien Law would require this Court to read the important retainage provisions out of the contract, thereby undermining the

parties' agreement because the purpose of the retainage provision is to defer final payment until the payment conditions of the contract are fulfilled. They, like the trial court and Appellate Division, argue that allowing Thomas Group to file and enforce its lien claim would permit Thomas Group to circumvent its contractual obligations. Wharton and AHD emphasize that Section 8 of the Lien Law, containing the verification form that the lien claimant must file along with the lien claim, requires the claimant to certify that the amount claimed is "due and owing" at the time of the filing. They assert that payment under the contract was not "due and owing" on September 3, 1997, the date claimant filed the lien, because Thomas Group had not complied with all of the terms of the contract on that date.

### III.

In our view, the key to understanding the Lien Law and the relationship among its provisions is found in *N.J.S.A.* 2A:44A-3. That section sets forth in simple, affirmative terms a claimant's entitlement to a lien:

> Any contractor, subcontractor or supplier who provides work, services, material or equipment pursuant to a contract, shall be entitled to a lien for the value of the work or services performed, or materials or equipment furnished in accordance with the contract and based upon the contract price, subject to the provisions of sections 9 [2] and 10 [3] of this act.
>
> [*N.J.S.A.* 2A:44A-3.]

The Legislature's primary purpose in revising the Lien Law was to simplify the lien-filing process. That was accomplished by streamlining the process to eliminate the prior law's pre-filing requirement, which had caused tension between contractors and owners, and by abolishing lien waivers, which impinged on con-

---

[2] Section 9 limits the amount of the lien claim to the contract price, or any unpaid portion thereof, whichever is less, of the claimant's contract for the work, services, material or equipment provided. *N.J.S.A.* 2A:44A-9.

[3] Section 10 states that the lien claim shall attach to the interest of the owner from and after the time of filing of the lien claim. *N.J.S.A.* 2A:44A-10.

tractors' rights to obtain construction liens. Those revisions were made with an eye toward promoting contractors' lien rights.

The Senate Commerce Committee Statement accompanying the Senate Committee Substitute for Senate Bill Nos. 1010, 811 and 1394, which were merged to become the Construction Lien Law, provides that "a contractor, subcontractor or supplier who provides work, services, material or equipment for use in the improvement of real property, pursuant to a written contract, is entitled to a lien on the owner's interest in the real property for the value of the work or services performed." Senate Commerce Comm. Statement to S.C.R. for Sen. Nos. 1010, 811 and 1394 (May 27, 1993). The Statement does not refer to any requirement on the part of the contractor to comply with payment provisions or to comply with contract specifications. The phrase "in accordance with the contract" is not defined in the statute, nor is it discussed in the statute's legislative history. Moreover, there are no New Jersey cases construing that phrase.

■■■ We are of the view that the language "in accordance with the contract" in Section 3 must be read sensibly and consistent with the law's overall intent to permit contractors to file liens and thus protect the value of the work they have provided. We interpret that language to mean that a party must perform work under a contract to be entitled to a lien, but not to require literally that a party must satisfy all of the terms and conditions of a contract before it can file a lien. To ascribe so restrictive a meaning to the phrase "in accordance with the contract" would frustrate the primary objective of this legislation. A well-established tenet of statutory construction is that a statute should be construed sensibly and in furtherance of the underlying legislative purpose. *Brooks v. Odom*, 150 *N.J.* 395, 401, 696 *A.*2d 619 (1997). Furthermore, we are mindful that lien statutes

are remedial and are designed to guarantee effective security to those who furnish labor or materials used to enhance the value of the property of others, and, where the terms of the statute reasonably permit, the law should be construed to effect this remedial purpose.

[*J.R. Christ Construction Co., Inc. v. Willete Associates,* 47 *N.J.* 473, 477, 221 *A.*2d 538 (1966) (citations omitted).]

Nevertheless, Wharton and AHD contend that Thomas Group should be denied its lien claim based on Section 8 of the Lien Law, which contains the verification form to be filed by the claimant when it files the lien claim. The form requires the lien claimant to certify the truth of the information set forth in the construction lien, including that the amount claimed is "due and owing" at the date of the filing, pursuant to claimant's contract. *N.J.S.A.* 2A:44A–8.

As we noted earlier, the phrase "due and owing" is not defined in the statute, and the legislative history does not shed light on its meaning. It is unclear from the statutory scheme whether the limitation of the lien claim to sums "due and owing" at the time of the filing was intended to prevent a party from filing a lien for amounts that are not yet payable.

Courts in other jurisdictions have interpreted their lien laws to preserve the right of claimants to file lien claims when the parties have performed the work, even though the payment was not yet technically due under the contract. *See, e.g., In re Schiavone Const. Co.,* 181 *A.D.*2d 580, 581 *N.Y.S.*2d 322, 323 (1992) (holding that statute permitted lien claim to be filed before payment was due, although it could not be foreclosed before that date); *Delaware Towers Inc. v. Siegfried Construction,* 41 *Misc.*2d 227, 245 *N.Y.S.*2d 26, 28 (Sup.Ct.1963) (holding that lien claimant could not commence action to foreclose on lien claim because of deferral of payment provision in contract, but could have lien recorded as security for payment).

■ There are two competing interests here, each worthy of protection. On the one hand, we have the contractor, who having performed substantially all of its work, seeks the protection of its statutory lien claim and superiority over claimants junior in priority. On the other hand, we have the owner's interest in not being compelled to pay the contractor until all of the bargained for prerequisites to payment are satisfied. Our task is to fashion

protections for both interests, if it can reasonably be done, within the four corners of the statutory scheme.

These two competing interests can be accommodated. The contractor should be allowed to file its lien. There is no dispute that at the time it filed its lien, Thomas Group had performed the majority of the physical work on the property. Performing that work entitled it to the protection afforded by the construction lien provision of *N.J.S.A.* 2A:44A–3.

Unless the Thomas Group is allowed to file its lien, the statutory protections the Legislature intended to afford it might arguably be forfeited. Thomas Group filed its lien claim on September 3, 1997, five days after the date the last work was performed on the project, which is listed on the lien claim form as August 29, 1997. Because Section 6 of the Lien Law requires a lien claimant to file a lien claim within 90 days of the last work, services, material or equipment provided, Thomas Group apparently was required to file its lien claim within 90 days of August 29, 1997.

Although the parties dispute whether Thomas Group had actually performed the work in accordance with the contract to entitle itself to payment under the contract on the date it filed, Thomas Group had, by all accounts, performed most of the physical work on the project. Had Thomas Group chosen to wait beyond ninety days, it might have lost its right to file a lien claim for that work.

We note that during the course of the lien claim litigation, in October 1997, AHD submitted its contractual dispute with Thomas Group to arbitration. The arbitration hearings began in December 1998 and the proceedings concluded in late December 1999, when the arbitrators rendered a decision finding that AHD owed $606,273.48 to Thomas Group under the contract. The amount awarded is not significantly different from the $658.290.10 constituting the amount of Thomas Group's lien claim.

Specifically, the arbitrators found that the total contract price, including change orders, was $5,192,848.48. Of that amount, Thomas Group had already been paid $4,452,202.00. Thus, the

balance owed to Thomas Group under the contract was $740,-646.48. However, the arbitrators credited $134,373.00 to AHD against the balance owed for the following items: additional architectural services, credit for work not completed; water leaks and caulking; legal and bonding costs; and work not completed, warranty and Punch List items.

Significantly, the arbitrators found that Thomas Group was not entitled to payment of the award until it provided AHD an affidavit including a sworn statement by Thomas Group's President Thomas Vitiello that: (1) payrolls, bills for material and equipment, and other indebtedness connected with Wharton's project had been paid or otherwise satisfied; (2) that the Thomas Group had no knowledge of any pending or threatened claims that have or may be brought against AHD in connection with Thomas Group's work on the project; and (3) that the Thomas Group shall indemnify AHD against any claim or lien against the company or its property. The arbitrator's decision stated that the affidavit should be furnished no later than 30 days after the date of the award and payment should be made no later than 30 days after that. At oral argument we were informed that various applications concerning the arbitrators' award were still pending, both before the arbitrators and the Superior Court, Chancery Division.

The arbitrators' findings lend support to the argument that Thomas Group filed a lien claim for an amount that was more than the value to which it was entitled under the contract at the time it filed the claim, because it had not completed the 55–page Punch List and had not turned over the required paperwork. However, as the trial court acknowledged, Thomas Group did not "willfully overstate" the amount of the lien claim. The amount of the lien claim was roughly equivalent to the amount Thomas Group was owed under the contract.

We conclude that Thomas Group did not have to risk losing its statutory lien by waiting until all of the contractual preconditions to payment were satisfied before it asserted its lien. We note that in the future the interests of an owner can adequately be

protected by staying the contractor's right to enforce its lien until the contractual preconditions for payment are met. In conjunction with such a stay application, the trial court should fix a reasonable schedule for the contractor to complete the preconditions of payment. The owner is entitled to a prompt resolution of competing claims. This accomplishes the legislative purpose of affording lien protection to contractors, while safeguarding the owner's right to insist on strict compliance with contractual terms of payment. There is no need here to impose the draconian remedy of discharging the lien claim altogether.

Wharton and AHD also make much of the fact that there were additional liens on the property filed by subcontractors and sub-subcontractors at the time Thomas Group filed its lien. Pursuant to the retainage provisions of the contract, Thomas Group was required to obtain lien waivers from those parties. Although there is no question that Thomas Group did not comply with that contractual provision, the fact that there were additional liens filed by subcontractors against the owner's property is of little practical significance because of the "lien fund" concept, provided for in *N.J.S.A.* 2A:44A-9.

Underlying the lien fund concept is the principle that an owner, contractor, or subcontractor should not be compelled to pay twice for the same work or services when a valid lien claim is filed. The statute provides that an owner's property is never subject to liens in an amount greater than the amount unpaid by the owner to its prime contractor at the time the lien claim is filed by one claiming a lien through that prime contractor. *N.J.S.A.* 2A:44A-10(a). Thus, while obtaining lien waivers is a prudent practice, an owner that does not require a contractor to furnish lien waivers for subcontractors or suppliers ultimately is protected against double payment because no lien rights attach once payment for the work is made to the contractor.

■ We hold that the trial court should not have discharged the lien claim as prematurely filed pursuant to Section 15. Rather, the trial court should have stayed Thomas Group's foreclosure

proceeding until the arbitrators determined the amount owing under the contract. Pursuant to Article 10.1 of the Thomas Group/AHD contract, the parties had agreed to submit claims, disputes and other matters arising out of the contract to arbitration.

Courts in other jurisdictions have stayed lien foreclosure actions pending the results of arbitration where determination of the amount and validity of the lien claim involved interpretation of a construction contract containing an arbitration provision. *See, e.g., Mills v. Robert W. Gottfried, Inc.,* 272 *So.*2d 837 (Fla.Dist.Ct. App.1973); *Mancini v. Stern,* 28 *Misc.*2d 77, 210 *N.Y.S.*2d 329 (N.Y.Sup.Ct.1960); *Brescia Const. Co. v. Walart Const. Co.,* 264 *N.Y.* 260, 190 *N.E.* 484 (1934); *see generally* Maurice T. Brunner, Annotation, *Demand for or Submission to Arbitration as Affecting Enforcement of Mechanic's Lien,* 73 *A.L.R.*3d 1042 (1976) (reviewing state cases utilizing stay procedure in connection with lien foreclosure actions involving dispute under contract on which lien claim is based).

We anticipate that on remand the trial court will determine, based on the arbitrators' findings, the amount the contractor actually is owed, and will allow Thomas Group to file a lien claim in that amount if that amount has not already been paid to Thomas Group pursuant to the arbitrators' award. Any issues concerning the priority of Thomas Group's lien should also be resolved by the trial court.

The judgment of the Appellate Division is reversed and the matter is remanded to the Law Division for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices O'HERN, STEIN, COLEMAN, LONG, VERNIERO and LaVECCHIA—7.

*Opposed*—None.