970 A.2d 368 (2009)
407 N.J. Super. 153
Jan SCHADRACK and Ngoc Nguyen, husband and wife, Plaintiffs-Appellants,
v.
K.P. BURKE BUILDER, LLC, Defendant-Respondent.
Jan Schadrack and Ngoc Nguyen, husband and wife, Plaintiffs-Appellants,
v.
L.E.D. Electrical and Mechanical Contractors, LLC, Defendant-Respondent.
Nos. A-5035-07T3, A-5063-07T3.
Superior Court of New Jersey, Appellate Division.
Argued January 20, 2009.
Decided May 8, 2009.
*369 Robert L. Grundlock, Jr., Princeton, argued the cause for appellants (Rubin, Ehrlich & Buckley, P.C., attorneys; Mr. Grundlock and Richard M. Buck, Jr., on the brief).
Michael C. Schonberger, Princeton, argued the cause for respondent K.P. Burke Builder, LLC.
Stanley R. Gentile, Haddonfield, argued the cause for respondent L.E.D. Electrical and Mechanical Contractors, LLC (Law Offices of Christopher Chiacchio, LLC, attorneys, Oaklyn; Mr. Gentile, on the brief).
*370 Before Judges CARCHMAN, SABATINO and SIMONELLI.
The opinion of the court was delivered by
SABATINO, J.A.D.
In these related appeals, which we hereby consolidate, plaintiff homeowners challenge the Law Division's application of the Construction Lien Law ("the CLL"), N.J.S.A. 2A:44A-1 to -38, to two contractors who each performed work on their marital residence. We affirm the trial court's orders in both cases.

I.
In May 2006, plaintiffs, Jan Schadrack and Ngoc Nguyen, entered into a written agreement with K.P. Burke Builder, LLC ("Burke"),[1] for the construction of a "5600 square foot single-family residence to be constructed on the premises of [plaintiffs] at Lot 18.04 in Block 102" in Princeton. The agreement specified that it would be governed by the laws of New Jersey. It did not contain any provisions regarding arbitration.
Burke thereafter hired a subcontractor, L.E.D. Electrical and Mechanical Contractors, LLC ("LED"),[2] to perform electrical and HVAC work on the premises. According to LED's submissions, the principal amount of the agreement between Burke and LED for the electrical work was for $33,498.00, but, due to the execution of several change orders, the sub-contract charges increased by $26,434.80. In addition, LED subsequently agreed to provide for the installation of an HVAC unit on the premises. The sub-contract price for that HVAC work originally totaled $35,450.00, but, due to the execution of several other change orders, increased by $4,064.00. Accordingly, the adjusted LED contract price (including all change orders) was $99,498.80. Approximately $60,000 of that balance was paid by Burke, leaving $39,200.80 as an amount allegedly due to LED.
After problems ensued with being paid in full for their respective work, Burke and LED each undertook measures in an effort to protect their interests under the CLL. It is undisputed that the work performed respectively by Burke and LED is subject to the statute.
Burke acted first. On January 29, 2008, Burke filed a "Notice of Unpaid Balance and Right to File Lien" ("NUB"), pursuant to the CLL, see N.J.S.A. 2A:44A-20 and -21, in the amount of $128,244.00 with the Mercer County Clerk. However, a demand for arbitration, as prescribed by N.J.S.A. 2A:44A-21(b)(3), did not accompany Burke's filing and service of the NUB. According to the record, Burke had, in fact, prepared an arbitration demand, but had not filed the demand with the American Arbitration Association ("AAA"). Nor did Burke serve the demand on plaintiffs with its original NUB.
Approximately one week later, on February 6, 2008, LED filed its own NUB. Unlike Burke's original filing, LED contemporaneously served and filed with its NUB a demand for arbitration on the AAA and plaintiffs.

A. The LED Proceedings

On February 19, 2008, plaintiffs submitted a letter to the AAA, opposing LED's arbitration demand, pointing out: (1) that the demand was not accompanied by documentation supporting the claim, and (2) that the paperwork identified "K.P. *371 Burke" and not "K.P. Burke Builder, LLC," with whom plaintiffs maintained a contract.
Following its receipt of plaintiffs' opposition papers, LED filed a supplemental submission with the AAA on February 20, 2008. That submission not only contained an argument section but also attached pertinent contractual documents between Burke and LED. Plaintiffs were served with LED's submission, but did not attempt to respond to it.
After considering the parties' respective positions, the arbitrator entered an award in favor of LED. The award was transmitted on March 6, 2008, and received by the parties on March 10, 2008. The arbitrator determined that LED was entitled to file a lien claim against plaintiffs in the amount of $39,200.80. Consequently, the lien claim was properly filed with the Mercer County Clerk on March 17, 2008.
Three days prior to LED's filing of the lien claim, plaintiffs filed an order to show cause in the Law Division against LED. Plaintiffs sought to vacate the arbitrator's decision pursuant to the CLL, which authorizes summary actions to challenge an arbitrator's award made under the statute. See N.J.S.A. 2A:44A-21(b)(10). On April 12, LED filed an answer, counterclaim, and third-party complaint in the Law Division against Burke. The counterclaim sought to foreclose on LED's recently-filed lien claim.
The order to show cause was heard by a Law Division judge on May 2, 2008. Plaintiffs primarily argued that LED's arbitration demand had violated the CLL because LED had failed to support its initial filing with documentation. They contended that the defect was not cured by LED's submission of documentation approximately one week later. Plaintiffs argued that the arbitrator erred by allowing LED to submit additional written materials belatedly with the AAA.
Following a lengthy colloquy with counsel, the motion judge in LED made the following findings:
 The last day of work on the project attributed to LED was January 17, 2008;
 The NUB and demand for arbitration were filed and served on February 6, 2008;
 AAA determined that the matter should be arbitrated on the papers;
 On February 19, 2008, plaintiffs responded to the arbitration demand by submitting to the AAA a letter in opposition, arguing that they did not have a contractual relationship with "K.P. Burke"; but in fact maintained a relationship with "K.P. Burke Builders, LLC";
 The arbitrator issued a decision on March 10, 2008, and thereafter, LED filed its lien claim on March 17, 2008;
 LED complied with all time requirements under the CLL up to that point;
 The AAA arbitrator's decision to allow LED to submit additional documentation was not governed by the CLL's strict compliance provision, see N.J.S.A. 2A:44A-5(c), but rather by the AAA's Rules, which grant arbitrators a degree of discretion.
As requested by the court, LED submitted a proposed form of order to memorialize the court's oral ruling. Plaintiffs objected to the form of order. After deleting the portion of the order specifying the amount of the lien claim, the judge entered the order.

B. The Burke Proceedings

Before the arbitrator in the LED matter rendered his decision, Burke filed what was entitled an "amended" NUB on February *372 22, 2008, in the amount of $229,785.20. The amended NUB was returned as "filed" from the Mercer County Clerk on March 11, 2008. On that same day, the AAA and plaintiffs were served by Burke with a demand for arbitration.
The arbitration in the Burke matter occurred on March 28 and April 1, 2008. On April 2, 2008, the arbitrator issued his decision, finding that Burke had the right to file a lien claim in the amount of $63,686.00. The following day, April 3, 2008, Burke filed its lien claim with the Mercer County Clerk.
On April 15, 2008, plaintiffs brought an order to show cause in the Law Division against Burke, seeking to vacate the arbitrator's award.[3] A hearing on the order to show cause took place on May 20, 2008. During that hearing, plaintiffs argued that Burke should have been foreclosed from going to arbitration because he had not filed a demand for arbitration simultaneously with the service of the original NUB. Plaintiffs also pointed out that this omission resulted in the Burke arbitration occurring after the normal thirty-day time frame specified by the CLL had expired. See N.J.S.A. 2A:44A-21(b)(6).
During the oral argument on the Burke matter, the motion judge explored the equities of the circumstances with counsel, and whether plaintiffs had suffered any significant prejudice by virtue of Burke's allegedly defective filings. Plaintiffs' counsel maintained that the very existence of a NUB on file in the public record, whether defective or not, is prejudicial because such a filing can interfere with project financing and the obtaining of land-use approvals. In opposition, defense counsel argued that Burke indeed had strictly complied with the CLL. Alternatively, the defense urged that the court excuse its alleged non-compliance with the CLL, asserting that any procedural mistakes by Burke were made in good faith.
Assessing these respective positions, the motion judge in Burke found that, at most, only "modest harm" existed with respect to both Burke and plaintiffs. The judge further determined that, in these particular circumstances, the strict application of the CLL's provision calling for simultaneous service of an arbitration demand with a NUB would operate unjustly if it resulted in the forfeiture of Burke's lien claim. Consequently, the judge denied plaintiffs' application to vacate Burke's arbitration award. The judge dismissed their order to show cause and verified complaint with prejudice.

C. The Present Appeals

Plaintiffs appeal the Law Division's dispositions in both the LED and Burke matters. In essence, plaintiffs argue that the trial court misapplied the CLL in failing to require these two contractors to adhere strictly to the procedural requirements of the statute.
Specifically, with respect to the LED case, plaintiffs contend that the trial court applied an incorrect and unduly lenient standard of review in evaluating the arbitration award. Plaintiffs also complain about LED's misidentification of Burke and its submission of supplemental materials. With respect to the Burke matter, plaintiffs maintain that the trial court improperly excused the late service of the arbitration demand by resorting to equitable considerations, allegedly in contravention of the strict compliance mandated by the CLL.

*373 II.
The CLL[4] offers statutory protection to contractors, subcontractors or suppliers who provide "work, services, material or equipment," pursuant to a written contract. N.J.S.A. 2A:44A-3. The statute is designed "to guarantee effective security to those who furnish labor or materials used to enhance the value of the property of others." The Thomas Group, Inc. v. Wharton Senior Citizen Housing, Inc., 163 N.J. 507, 517, 750 A.2d 743 (2000). Specifically, in relevant part, the CLL provides:
Any contractor, subcontractor or supplier who provides work, services, material or equipment pursuant to a contract, shall be entitled to a lien for the value of the work or services performed, or materials or equipment furnished in accordance with the contract and based upon the contract price, subject to the provisions of sections 9 and 10 of this act.
[N.J.S.A. 2A:44A-3.]
In that regard, the Supreme Court has observed that the CLL "must be read sensibly and consistent with the law's overall intent to permit contractors to file liens and thus protect the value of the work they have provided." Thomas Group, Inc., supra, 163 N.J. at 517, 750 A.2d 743; see also D.D.B. Interior Contr., Inc. v. Trends Urban Renewal Ass'n, Ltd., 176 N.J. 164, 167, 821 A.2d 1135 (2003).
Aside from the CLL's primary aim of protecting contractors from being wrongfully deprived of compensation for their work, the Legislature also recognized in the statute other important interests that pertain to liens in the residential (as opposed to the commercial) housing context. Specifically, the Legislature expressly declared in the CLL that:
the ability to sell and purchase residential housing is essential for the preservation and enhancement of the economy of the State of New Jersey and that while there exists a need to provide contractors, subcontractors and suppliers with statutory benefits to enhance the collection of money for goods, services and materials provided for the construction of residential housing in the State of New Jersey, the ability to have a stable marketplace in which families can acquire homes without undue delay and uncertainty and the corresponding need of lending institutions in the State of New Jersey to conduct their business in a stable environment and to lend money for the purchase or finance of home construction or renovations requires that certain statutory provisions as related to the lien benefits accorded to contractors, subcontractors and suppliers be modified.
[N.J.S.A. 2A:44A-21.]
To accommodate these competing interests in the residential context, the Legislature enacted separate and distinct provisions in the CLL for residential and commercial projects.
More particularly, under the CLL in the residential context, a "lien claim shall be signed, acknowledged and verified by oath of the claimant ... and filed with the county clerk not later than 90 days following the date the last work, services, material or equipment was provided for which payment is claimed." N.J.S.A. 2A:44A-6. In the commercial arena, the only obligation of a contractor under the statute is to mail a copy of the filed lien claim and to enforce its lien by instituting a legal action within one year from the last date of work. See N.J.S.A. 2A:44A-7 and -14. A commercial *374 lien claimant is entitled, but not required, to file a NUB. As with the lien claim, a NUB is also filed with the clerk of the county in which the property is located. In essence, N.J.S.A. 2A:44A-20(a) authorizes a non-residential lien claimant to file a NUB to gain priority over certain kinds of conveyances.
If, on the other hand, work is performed under a residential construction contract, the lien claimant must do more under the CLL to ensure that the lien is properly filed and perfected. First, as a condition precedent to the filing of any lien claim arising under a residential contract,[5] the lien claimant must first file and serve a NUB. N.J.S.A. 2A:44A-20. Second, the claimant must also, simultaneously with the service of a NUB, "serve a demand for arbitration and fulfill all the requirements and procedures of the [AAA] to institute an expedited proceeding before a single arbitrator designated by the [AAA]." N.J.S.A. 2A:44A-21(b)(3).
The parties are to participate in arbitration within thirty days of receipt of the arbitration demand, unless extended by consent. See N.J.S.A. 2A:44A-21(b)(6). The arbitrator must then make the following determinations:
(a) whether the Notice of Unpaid Balance [NUB] and Right to File Lien was in compliance with section 20 of this act [N.J.S.A. 2A:44A-20] and whether service was proper under section 7 [N.J.S.A. 2A:44A-7] of [the CLL];
(b) the validity and amount of any lien claim which may be filed pursuant to the [NUB] and Right to File Lien;
(c) the validity and amount of any liquidated or unliquidated setoffs or counterclaims to any lien claim which may be filed; and
(d) the allocation of costs of the arbitration among the parties.
[N.J.S.A. 2A:44A-21(b)(4).]
Following the arbitration, a successful claimant must file a lien claim with the county clerk within ninety days "following the date the last work ... was provided for which payment is claimed." N.J.S.A. 2A:44A-6.
In general, these procedures under the CLL for a residential project are to be complied with strictly. See N.J.S.A. 2A:44A-5(c) (stating that no lien can attach to a residential project "[f]or work, services, material or equipment ... unless there is strict compliance with sections 20 and 21 of this act.") (emphasis added). Additionally, under the statutory provisions relating solely to residential projects, the arbitration result is subject to review by the Superior Court:
If either the lien claimant or the owner is aggrieved by the arbitrator's determination, then either party may institute a summary action in the Superior Court, Law Division, for the vacation, modification or correction of the arbitrator's determination. The arbitrator's determination shall be confirmed unless it is vacated, modified or corrected by the court. The court shall render its decision after giving due regard to the time limits and procedures set forth in this act.

[N.J.S.A. 2A:44A-21(b)(10) (emphasis added).]
If the lien claim is not filed in accordance with the CLL's explicit procedures, it can be declared unenforceable. D.D.B. *375 Interior Contr., supra, 176 N.J. at 167, 821 A.2d 1135. N.J.S.A. 2A:44A-15(a) expressly provides for the forfeiture of lien rights when a lien claim is frivolous, willfully inflated, or "substantially" defective:
If a lien claim is without basis, the amount of the lien claim is willfully overstated, or the lien claim is not filed in substantially the form or in the manner or at a time not in accordance with the provisions of this act, the claimant shall forfeit all claimed lien rights and rights to file subsequent lien claims to the extent of the face amount claimed in the lien claim. The claimant shall also be liable for all court costs, and reasonable legal expenses, including attorneys' fees, incurred by the owner, contractor or subcontractor, or any combination of owner, contractor and subcontractor, in defending or causing the discharge of the lien claim. The court shall, in addition, enter judgment against the claimant for damages to any of the parties adversely affected by the lien claim.
[(Emphasis added).]
These special requirements were intended to minimize delay and uncertainty in the resolution of lien claims affecting residential property. See Mansion Supply Co., Inc. v. Bapat, 305 N.J.Super. 313, 317, 702 A.2d 509 (App.Div.1997), certif. denied, 153 N.J. 49, 707 A.2d 153 (1998).
Accordingly, there are essentially four avenues under the CLL that the owner of the property can pursue once a valid lien claim is filed:
 The owner can pay the lien claimant what is owed, or the party owing the lien claimant can pay the claimant, and the claimant must discharge the lien claim within thirty days of payment. See N.J.S.A. 2A:44A-12, -30;
 The owner can post a bond equal to 110% of the lien claim as substitute security for the liened property. See N.J.S.A. 2A:44A-31;
 The owner can serve a demand on the lien claimant to bring a lawsuit within thirty days. See N.J.S.A. 2A:44A-14(a)(2); or
 The owner can do nothing and the lien claimant must initiate a lawsuit within one year from the date the last work was provided. See N.J.S.A. 2A:44A-14(a)(1).
The CLL does not limit the right of a claimant from pursuing any other remedy provided by law. N.J.S.A. 2A:44A-3. However, any subsequent lien claim "shall not include a claim for the work, services, equipment or material claimed within the forfeited lien claim." N.J.S.A. 2A:44A-15(c).

A.
As a threshold matter in the LED case, plaintiffs contend that adherence to the arbitration procedures required by the CLL in residential disputes must be reviewed by the Superior Court under a de novo standard of review. This contention is legally correct, although for reasons we shall explain, it is inconsequential in this case. Although the motion judge in LED invoked the wrong standard of review in his oral ruling, his ultimate analysis of the LED arbitration substantively comported with the standard of review called for under the statute.
As we have already noted, once a NUB and a demand for arbitration are served, the arbitration is to take place within thirty days. Thereafter, the arbitrator must then make the four determinations specified under N.J.S.A. 2A:44A-21(b)(4). Following the arbitration, the lien claimant (in this instance, LED), if successful, must file a lien claim with the county clerk within ninety days. N.J.S.A. 2A:44A-6.
*376 If, however, any of the parties are not satisfied with the arbitration, under the CLL, "either party may institute a summary action in the Superior Court, Law Division, for the vacation, modification or correction of the arbitrator's determination." N.J.S.A. 2A:44A-21(b)(10) (emphasis added). Plaintiffs contend that this language evinces an intent on the part of the Legislature to provide for a de novo review.
Plaintiffs argue that the trial court improperly held that the arbitrator's decision in LED was "final" by applying the wrong standard of review. In support of that position, plaintiffs cite to a colloquy between their counsel and the motion judge, in which the judge expressed a view that his obligations in reviewing the decision were essentially those governing a reviewing judge in arbitrations more generally set forth under The New Jersey Arbitration Act, N.J.S.A. 2A:24-1 to -11, (the "Arbitration Act"). Under that more general arbitration statute, a reviewing court may only vacate an award due to fraud, impartiality or misconduct, N.J.S.A. 2A:24-8(a)-(d), or modify an award based on mistake or miscalculation, N.J.S.A. 2A:24-9.
Plaintiffs argue that the appropriate standard of review here under the CLL is the de novo standard comparably afforded to certain other situations mandating arbitration. See, e.g., R. 4:21A-1 (requiring arbitration of certain motor vehicle and personal injury actions); see also R. 4:21A-6 (permitting de novo review of mandatory arbitration). Plaintiffs contend that the motion judge erred in applying the more deferential judicial review standards of the Arbitration Act, N.J.S.A. 2A:24-9; see also Allstate Ins. Co. v. Universal Underwriters Ins. Co., 330 N.J.Super. 628, 634, 750 A.2d 223 (App.Div.2000) (discussing the "limited bases" of review under the Arbitration Act).
By its own terms, the CLL mandates arbitration as a condition precedent to a residential contractor having the right to file and enforce a lien claim. In essence, the arbitrator's decision comprises, as plaintiffs correctly argue, the establishment of a "prejudgment lien" that must be confirmed thereafter in litigation subsequently brought pursuant to N.J.S.A. 2A:44A-14.
LED's position is that de novo judicial review is not appropriate for statutory compliance issues arising under the CLL. That position conflicts with the language in the CLL directing that arbitration awards issued pursuant to the statute lack finality. See N.J.S.A. 2A:44A-21(b)(9) ("any such determination [of the arbitrator] shall not be considered final in any legal action or proceeding") (emphasis added). N.J.S.A. 2A:44A-10 further prescribes that "either party may institute a summary action ... for the vacation, modification or correction of the arbitrator's determination. The arbitrator's determination shall be confirmed unless it is vacated, modified or corrected by the court." Ibid. (emphasis added). Nothing in the text of the CLL limits the grounds for "vacation, modification, or correction" of the arbitrator's award to the limited grounds specified more generally in N.J.S.A. 2A:24-8(1)(d), the provision which governs arbitrations outside of the CLL context. We agree with plaintiffs that a de novo standard of review applies, at least as to legal issues involving whether a party or the arbitrator transgressed a requirement of the CLL statute.
Despite the trial court's conceptual misapprehension about the correct standard for reviewing the legality of a CLL arbitrator's decision, we are satisfied that the court nonetheless performed what *377 amounted to, in effect, an appropriate de novo review of the arbitrator's ruling. In his oral opinion, the motion judge detailed the pertinent chronology of events starting with LED's last day of work on plaintiffs' house, followed by LED's filing of a timely NUB and accompanying arbitration demand, continuing with the arbitrator's procedural decision to allow LED to submit additional supporting documents, and concluding with the arbitrator's final award. In substance, if not form, the motion judge's ruling assessed the critical elements of LED's lien claim and the gravamen of plaintiffs' objections to the process.
Although the motion judge's invocation of the constricted review criteria from the Arbitration Act, N.J.S.A. 2A:24-8, was misplaced, we discern no harm arising from that erroneous statutory reference. Indeed, we are independently satisfied that plaintiffs' legal arguments to invalidate LED's lien are unpersuasive.
Plaintiffs specifically maintain that LED violated the CLL's strict compliance requirement for residential liens by: (1) failing to include documentation supporting its NUB filing concurrently with its arbitration demand; and (2) listing "K.P. Burke" as the project contractor as opposed to "K.P. Burke Builder, LLC." Neither of those asserted deficiencies were deemed fatal to LED's claims by the AAA arbitrator, and neither of them require the intervention of this court.
As we have already noted, pursuant to N.J.S.A. 2A:44A-21(b)(3):
Unless the parties have otherwise agreed in writing to an alternative dispute resolution mechanism, simultaneously with the service [of the NUB], the lien claimant shall also serve a demand for arbitration and fulfill all the requirements and procedures of the American Arbitration Association [AAA] to institute an expedited proceeding before a single arbitrator designated by the [AAA].
[(Emphasis added).]
AAA Rule 3 provides for an expedited arbitration proceeding applicable to CLL matters. In general, a lien claimant must submit: (1) a filing fee; (2) two copies of the NUB; (3) the names, telephone numbers, and addresses of the property owner and general contractor; (4) the names, telephone numbers, and addresses of any parties' representative; and (5) a statement of whether "the claimant requests an oral hearing with the arbitrator ... [.]" Ibid.
AAA Rule 3(6) adds further guidance. That provision states that "if the claimant does not request an oral hearing, [the] claimant shall attach [with the demand] two (2) copies of all documents that claimant wishes to submit to the arbitrator." Ibid. (emphasis added). Notably, the typewritten arbitration demand filed by LED with the AAA indicated that LED was, in fact, requesting a hearing.[6] Specifically, the demand states that "CLAIMANT REQUESTS THAT ARBITRATION BE HELD AT THE FOLLOWING LOCALE: Haddonfield, New Jersey  Archer & Greiner, P.C., One Centennial Square, Haddonfield, New Jersey 08033." Hence, AAA Rule 3(6)'s requirement for the concurrent submission of supporting documentation did not apply. Ultimately, however, the arbitrator determined that a hearing was not necessary *378 and decided the LED matter on the papers.
Even if LED had not requested a hearing but still omitted supporting documentation with its arbitration demand, the arbitrator had the prerogative under AAA Rules to allow LED to amend its initial filing to include such support. AAA Rule 6 provides that amendments may be made to a demand for arbitration with the assent of the arbitrator or the parties. The arbitrator implicitly gave LED such permission to amend its filing by accepting and considering LED's supplemental materials.
Additionally, AAA Rule 21 provides that the "arbitrator shall interpret and apply these rules insofar as they relate to the arbitrator's powers and duties." Thus, assuming for the sake of argument that LED erred in omitting supporting documents from its initial AAA filing, the arbitrator had the authority and discretion to permit LED to submit additional materials once that omission was noted.
Plaintiffs contend that they were prejudiced by the arbitrator's consideration of LED's supplemental documents. We are not persuaded that such asserted prejudice, if any, was substantial enough to warrant judicial interference. LED submitted the supplemental documents after plaintiffs' counsel wrote his letter of February 19, 2008 to the AAA Case Manager complaining, among other things,[7] that supportive documents had not been appended to LED's arbitration demand. According to LED's ensuing arbitration statement, LED had made its supplemental filing after "a telephone call initiated by the AAA ... [during which] it was decided that this matter may be more appropriately decided by documents only and [LED's counsel] advised the AAA that the `back-up' documents would be forthcoming to all, which was acceptable by AAA." Those back-up documents mainly consist of LED's original contract with Burke, plus various pertinent change orders. Plaintiffs nowhere contest the relevance of those documents.
Plaintiffs did not attempt to tender substantive opposition to the arbitrator challenging the information that had been presented in LED's supplemental documents. Plaintiffs had submitted their earlier letter of opposition to the AAA, recognizing that "there is no specified form" for such responses under the AAA Rules. See AAA Rule 7. Instead of attempting to present a follow-up opposing letter[8] to the AAA after LED's supplemental materials were served, plaintiffs remained silent, essentially gambling that the arbitrator would ignore the supplemental materials.
Plaintiffs' assertion of prejudice arising from the arbitrator's procedural decision to accept LED's supplemental documents is further diminished by the fact that an arbitrator's decision authorizing a lien claim is not, as a matter of law, a final merits disposition entitling LED to a money judgment from plaintiffs. Even with an approved lien on file for a sum certain, LED must still prove its entitlement to *379 recovery on the merits, in a post-arbitration judicial proceeding. N.J.S.A. 2A:44A-14; see also Kvaerner Process, Inc. v. Barham-McBride Joint Venture, 368 N.J.Super. 190, 845 A.2d 692 (App.Div. 2004) (explaining the effects of failing to bring an action). Although we appreciate the collateral impacts on financing and other matters that the pendency of a NUB can generate, we decline to adopt plaintiffs' position that the pendency of a NUB is always prejudicial, per se.
Weaker still is plaintiffs' objection to LED's misdesignation of Burke's corporate name in its arbitration demand. LED admittedly referred to the residential contractor as "K.P. Burke" in its arbitration demand, rather than by its true corporate identity, "K.P. Burke Builder, LLC." We discern no real prejudice to plaintiffs arising from this corporate misdesignation. It is readily apparent that plaintiffs and their counsel knew exactly who LED was referring to as "K.P. Burke" in its arbitration demand.
The arbitrator did not treat this imprecision of nomenclature as a material deficiency; nor did the trial court. In these circumstances, the misdesignation does not rise to the kind of deficiency that transgresses the "strict compliance" tenets of N.J.S.A. 2A:44A-5(c). The misdesignation was a de minimus error. As the Supreme Court recognized in Thomas Group, supra, 163 N.J. at 515, 750 A.2d 743, the CLL must be read "sensibly." See also Craft v. Stevenson Lumber Yard, Inc., 179 N.J. 56, 68, 843 A.2d 1076 (2004) (citing Thomas Group for that same proposition).
In sum, we detect no "sensible" reason to set aside the trial court's determination respecting LED. The alleged documentary shortcomings identified by plaintiffs were well within the AAA arbitrator's power to consider and address. We perceive no material departure from the legal requirements of the CLL here that require judicial correction. Accordingly, we affirm the Law Division's order of May 20, 2008, sustaining the arbitrator's decision in LED and dismissing plaintiffs' complaint in that case.[9]

B.
Plaintiffs' challenge to the procedures followed in the Burke matter is somewhat different from their challenge in LED, because their criticism in Burke is not about what transpired before the AAA arbitrator, but rather concerns an asserted statutory violation in triggering the arbitration process in the first place. Plaintiffs' critique hinges upon Burke's failure to serve a concurrent demand for arbitration along with its original NUB.
As we have already noted, N.J.S.A. 2A:44-21(b)(3) prescribes that, absent a different alternative dispute mechanism agreed upon by the parties in writing, a lien claimant "shall also serve a demand for arbitration" upon the premises owner and any adverse contractor. The statute instructs that such service of the arbitration demand is to occur "simultaneously with the service [of the NUB] under [N.J.S.A. 2A:44A-21(b)(3)]."
With respect to service, the CLL directs in its residential provisions that "service of the [NUB] shall be effected in accordance with the provisions of Section 7 of [the *380 CLL]," i.e., N.J.S.A. 2A:44A-7. Section 7 of the statute, in turn, reads as follows:
Within 10 business days following the filing of a lien claim, the claimant shall, by personal service or registered or certified mail, return receipt requested, postage prepaid, serve or mail a copy of the lien claim as prescribed in section 8 of this act to the last known business address or place of residence of the owner and, if any, of the contractor and the subcontractor, against whom the claim is asserted. Proof of timely mailing shall satisfy the requirement of service of the lien claim. The service of the lien claim provided for in this section shall be a condition precedent to enforcement of the lien; however, the service of the lien claim outside the prescribed time period shall not preclude enforceability unless the party not timely served proves by a preponderance of the evidence that the late service has materially prejudiced its position. Disbursement of funds by the owner, a contractor or a subcontractor, or the creation or conveyance of an interest in real property by the owner, without actual knowledge of the filing of the lien claim, shall constitute prima facie evidence that the party has been materially prejudiced.
[N.J.S.A. 2A:44A-7 (emphasis added).]
Burke concedes that the original NUB that it served upon plaintiffs was not accompanied by a corresponding demand for arbitration. The document that Burke labeled as its "amended NUB" was thereafter served, along with a demand for arbitration, on March 11, 2008, the day it was returned to Burke's counsel by the Mercer County Clerk.
Plaintiffs maintain that Burke had no right to amend its original NUB, which it filed on January 29, 2008, because more than thirty days elapsed from the date it was served[10] to the date of the arbitrator's ultimate decision on April 2, 2008. See N.J.S.A. 2A:44A-21(b)(6). In reply, Burke contends that the timeliness of its arbitration demand and the arbitrator's decision should not be measured from the original filing of a NUB on January 29, 2008, because the original NUB allegedly "lapsed," and the process started anew, when Burke filed and served its second NUB.
We agree with plaintiffs that Burke's filing of February 27, 2008, should be treated, consistent with the document's labeling, as an "amended NUB" rather than a new NUB. That conclusion does not, however, end our analysis. We recognize that at the time of service, Burke's original NUB was not accompanied by a simultaneous demand for arbitration. The demand was served later, along with the amended NUB. The question then becomes whether, as a matter of law, the late service of the arbitration demand must defeat Burke's lien claim.
Plaintiffs argue that the tardiness of the arbitration demand is an inexcusable deviation that violates the CLL's "strict compliance" principle for residential projects. See N.J.S.A. 2A:44A-5(c). Plaintiffs' argument on that score is mechanistic and absolute. A closer examination of the pertinent statutory provision, however, reveals more nuanced factors for our consideration.
Section 5(c) of the CLL calls for "strict compliance with sections 20 and 21 of [the statute]." Section 21, in turn, contains the requirement for an arbitration demand to be served simultaneously with the NUB. N.J.S.A. 2A:44A-21(b)(3). Subsection *381 (b)(3) of Section 21 further instructs that service of the arbitration demand is to be performed "simultaneously with the service [of the NUB] under paragraph (2) of this subsection," i.e., N.J.S.A. 2A:44A-21(b)(2). Subsection (b)(2) of Section 21, meanwhile, directs that service of a NUB "shall be effected in accordance with the provisions of Section 7 of [the CLL]." N.J.S.A. 2A:44A-21(b)(2).
As one follows this chain of internal statutory references, it becomes readily apparent that the service of an arbitration demand in a residential context ultimately is governed by the overarching terms of Section 7, i.e., N.J.S.A. 2A:44A-7. In other words, the "strict compliance" principle of N.J.S.A. 2A:44A-5(c) is qualified by the statute's internal references pointing back to its general language concerning service, as set forth in N.J.S.A. 2A:44A-7. This arrangement within the statutory structure makes eminent sense. We conceive of no reason why the terms governing service in a residential CLL case should be any different than the general procedures that the statute prescribes for serving a NUB (or other related papers) in any context, residential or commercial.
We now come to the critical point of analysis: whether or not Burke's delay in serving an arbitration demand upon plaintiffs was excusable under Section 7. It is clear that the demand was served more than "10 business days following the filing of [Burke's] original lien claim." See N.J.S.A. 2A:44A-7. That lateness does not resolve the appeal, because Section 7 also instructs that "the service of a lien claim outside the prescribed time period shall not preclude enforceability [of the lien claim] unless the party not timely served proves by a preponderance of the evidence that the later service has materially prejudiced its position." Ibid. (emphasis added). Such material prejudice may be demonstrated, in a prima facie manner, by an owner's disbursement of funds or a conveyance of an interest in the property "without actual knowledge of the filing of the lien claim." Ibid.
Here, plaintiffs were aware of Burke's lien claim when they were originally served with it on or about January 29, 2008. That lien claim increased in amount when Burke amended it the following month. Plaintiffs surely were not surprised when Burke thereafter served them with an arbitration demand, albeit beyond the ten days called for under N.J.S.A. 2A:44A-7. Indeed, Burke would have had no other way to advance its NUB and the lien process, since the parties had not agreed in writing to an alternative dispute resolution process. See N.J.S.A. 2A:44A-21(b)(3).
The motion judge in Burke reasonably evaluated whether plaintiffs were sufficiently prejudiced to justify vacation of Burke's lien. Although the judge did not expressly invoke N.J.S.A. 2A:44A-7 in his oral decision, his analysis reflects a considered assessment of the fairness and unfairness to both parties in permitting Burke's belated service of the arbitration demand. We detect no reason to second-guess the judge's weighing of the comparative equities. Our deference is particularly warranted because plaintiffs have demonstrated none of the prima facie circumstances of material prejudice outlined in N.J.S.A. 2A:44A-7.[11]
*382 The mere pendency of a lien claim itself, which would exist in every case, cannot satisfy Section 7's requirement that an owner demonstrate material prejudice arising out of the lienor's untimely service. More than that must be shown, on a case-specific basis. Plaintiffs' per se argument would render meaningless the language in the last two sentences of Section 7 requiring proof of material prejudice by a "preponderance of the evidence." N.J.S.A. 2A:44A-7. Courts must endeavor "to give effect to every word of [a] statute, and should not assume that the Legislature used meaningless language." Med. Soc'y of N.J. v. N.J. Dep't of Law & Pub. Safety, 120 N.J. 18, 26, 575 A.2d 1348 (1990); see also Paper Mill Playhouse v. Millburn Twp., 95 N.J. 503, 521, 472 A.2d 517 (1984).
We also are unpersuaded by plaintiffs' contention that the AAA arbitration in Burke was a nullity because it was completed outside of the thirty-day time frame ordinarily contemplated by N.J.S.A. 2A:44A-21(b)(6). The arbitrator conducted two days of hearings on March 28 and April 1, 2008, which are dates not long after the thirty-day period after Burke served its original NUB, and are actually within thirty days of service of the amended NUB and arbitration demand on March 11, 2008. Among other things, these hearings clarified the nature and quantum of Burke's amended claims. There would have been no point in requiring the arbitration to proceed until after those amended claims were served and explored by the parties.
Moreover, the parties did not have unilateral control of the AAA's calendar. We will not interpret the CLL's thirty-day arbitration requirement so rigidly as to eliminate the ability of the AAA, within reason, to make appropriate adjustments in its scheduling and its completion of proceedings. We are persuaded that the extra time consumed here to complete the arbitration in this hotly-disputed matter was not unfair to the parties. Nor was the brief delay inimical to the text or spirit of the statute. In short, Burke's lien claim and related filings were not "substantially" defective as to justify forfeiture. See N.J.S.A. 2A:44A-15(a).
Consequently, we affirm the trial court's order in Burke dated June 11, 2008, sustaining the arbitrator's decision and dismissing plaintiffs' complaint.

C.
We have fully considered the remainder of plaintiffs' arguments on appeal, and conclude that they lack sufficient merit to be discussed in this opinion. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] Burke is the defendant-respondent in Docket No. A-5035-07T3.
[2] LED is the defendant-respondent in Docket No. A-5063-07T3.
[3] For reasons that are not clear from the record, the Burke case was assigned to a different Law Division judge than the judge who heard the LED matter.
[4] The CLL became effective in April 1994, replacing the former Mechanic's Lien Law. The 1994 legislation amended N.J.S.A. 2A:15-6. It also repealed N.J.S.A. 2A:44-64 to -104, as well as N.J.S.A. 2A:44-106 to -124.1.
[5] The CLL includes the following under the definition of residential: a one-family or two-family dwelling; a condominium; a housing cooperative; and a townhouse development. See N.J.S.A. 2A:44A-2. It is undisputed that plaintiffs' home construction project was residential.
[6] By contrast, plaintiffs themselves failed to request a hearing, which they had also the right to demand under AAA Rule 7.
[7] Plaintiffs also complained that LED had used an arbitration demand form created for commercial, rather than residential, liens. Plaintiffs do not press this complaint on appeal.
[8] Plaintiffs' counsel's objection letter of February 19, 2008, anticipated this by stating, as a self-fulfilling assertion, that "[LED's] failure cannot be cured by a reply brief, as the owners [plaintiffs] have no opportunity to file a reply brief." However, we see nothing in the AAA Rules that prohibits an AAA arbitrator from accepting, in his or her discretion, a reply brief submitted by a participant, where unfolding circumstances warrant it. We will not presume, as plaintiffs do here to their tactical advantage, that the arbitrator would necessarily have ignored a reply brief tendered by plaintiffs or their counsel once LED had submitted its supplemental materials.
[9] We find no relevance to Eastern Concrete Materials, Inc. v. Tarragon Edgewater Associates, LLC., 402 N.J.Super. 583, 955 A.2d 962 (App.Div.2008), a case cited in plaintiffs' reply brief on appeal. Eastern Concrete involved a distinguishable circumstance in which a lien claimant who was not in privity of contract with the project contractor had improperly attempted to avail itself of the CLL's statutory protections. Id. at 586, 955 A.2d 962.
[10] The actual date of service of the original NUB, after it was filed with the clerk, is not apparent from the record. In any event, there is no dispute that the service occurred more than thirty days before the arbitrator's decision on April 12.
[11] At oral argument before the motion judge, plaintiffs maintained that they had entered into indemnification agreements and obtained personal loans to complete the construction project. However, the record does not show that those subsequent agreements and financing agreements were undertaken "without actual knowledge of [Burke's] lien claim." N.J.S.A. 2A:44A-7. Notably, plaintiffs do not make such an assertion, or even address the equitable factors of N.J.S.A. 2A:44A-7 at all, in their appellate briefs.